UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ELEKTRA ENTERTAINMENT GROUP INC. et al.,          No. 05 CV 7340 (KMK)

                    Plaintiffs,

        -against-

DENISE BARKER,

                    Defendant.

-----------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW OF
DEFENDANT TENISE BARKER IN SUPPORT
<u>OF HER MOTION TO DISMISS THE COMPLAINT</u>**


BELDOCK LEVINE & HOFFMAN LLP
Attorneys for defendant Tenise Barker
99 Park Avenue, 16th Floor
New York, NY 10016
(212) 490-0400

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       POINT I

       THE COMPLAINT DOES NOT SET FORTH THE SPECIFIC ACTS
       AND TIMES OF ANY ALLEGED COPYRIGHT INFRINGEMENT . . . . . . . . . . . . . 1

       POINT II

       MERELY MAKING COPYRIGHTED WORKS AVAILABLE
       TO OTHERS IS NOT AN INFRINGING DISTRIBUTION . . . . . . . . . . . . . . . . . . . . . 5

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>:

<u>A&M Records, Inc . v . Napster. Inc.</u>, 239 F.3d 1004
(9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Arista Records, Inc. v. MP3Board, Inc.</u>, 00 Civ. 4660,
2002 U.S. Dist. LEXIS 16165 (S.D.N.Y. Aug. 29, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

<u>Barnhart v. Sigmon Coal Co.</u>, 534 U.S. 438 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>BMG Music et al. v. Conklin</u>, Case No. H-05-1482 (S.D. Tex. 2005) . . . . . . . . . . . . . . . . . . . 5

<u>Brode v. Tax Management, Inc.</u>, 1990 U.S. Dist. LEXIS 998 (N.D. Ill. 1990) . . . . . . . . . . . . 10

<u>Brought to Life Music, Inc. v. MCA Records, Inc.</u>, 2003 WL 296561
(S.D.N.Y. Feb. 11, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Carell v. Shubert Organization, Inc.</u>, 104 F.Supp.2d 236 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . 4

<u>Cuoco v. Moritsugu</u>, 222 F.3d 99 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>DiMaggio v. International Sports Ltd.</u>, 97 Civ. 7767,
1998 WL 549690 (S.D.N.Y. Aug. 31, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>Dreyfus v. Von Finck</u>, 534 F.2d 24 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Elektra Entertainment Group, Inc. v. Santangelo</u>, 05 Civ. 2414
(S.D.N.Y. Nov. 28, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Feist Publications, Inc. v. Rural Telephone Service Co., Inc.</u>,
499 U.S. 340 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>Franklin Electronic Publishers v. Unisonic Prod. Corp.</u>, 763 F.Supp. 1
(S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Goldstar (Panama) S.A. v. United States</u>, 967 F.2d 965
(4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Guaylupo-Moya v. Gonzales</u>, 423 F.3d 121 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Hamdi v. Rumsfeld</u>, 316 F.3d 450 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539 (1985) . . . . . . . . . . . . . . . . . . 8

Hopson v. Kreps, 622 F.2d 1375 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199
(4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Napster, Inc., 377 F.Supp.2d 796 (N.D.Cal. May 31, 2005) . . . . . . . . . . . . . . . . . . . passim

Kelly v. L.L. Cool J., 145 F.R.D. 32 (S.D.N.Y. 1992), aff'd, 23 F.3d
398 (2d Cir.), cert. denied, 513 U.S. 950, 115 S.Ct. 365 (1994) . . . . . . . . . . . . . . . . . . . . . . . . 1

Lindsay v. The Wrecked and Abandoned Vessel R.M.S. Titanic,
97 Civ. 9248, 1999 U.S. Dist. LEXIS 15837 (S.D.N.Y. Oct. 13, 1999) . . . . . . . . . . . . . . . . . . . 2

Livnat v. Lavi, 96 Civ. 4967, 1997 U.S. Dist. LEXIS 13633
(S.D.N.Y. Sep. 9, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Loud Records, LLC et al v. Does 1-74, 04 Civ. 9881 (S.D.N.Y. Oct. 12, 2005) . . . . . . . . . . . . 4

Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distribs.
and Northwest Nexus, Inc., 983 F. Supp. 1167 (N.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 10

Marvullo v. Gruner & Jahr, 105 F.Supp.2d 225 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . 1, 2, 3

Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.,
982 F. Supp. 503 (N.D. Ohio 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Plunket v. Doyle, 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 3

RSO Records v. Peri, 79 Civ. 5098, 1980 U.S. Dist. LEXIS 13490
(S.D.N.Y. Sep. 5, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sharp v. Patterson, 03 Civ. 8772, 2004 U.S. Dist. LEXIS 22311
(S.D.N.Y. Nov. 3, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . 2

Sony Music Corp. v. Scott, 03 Civ. 6886 (S.D.N.Y. Feb. 18, 2005) . . . . . . . . . . . . . . . . . . . . . . 5

State v. Perry, 83 Ohio St. 3d 41, 697 N.E.2d 624 (Ohio 1998) . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries</u>,
272 F.3d 441 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>Universal City Studios, Inc. v. Corley</u>, 273 F.3d 429 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . 11-12

**<u>Statutes and Treaties</u>**:

17 U.S.C. § 106(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17 U.S.C. § 504(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

WIPO Copyright Treaty, art. 14(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**<u>Legislative Materials:</u>**

H.R. Rep. No. 94-1476, at 62 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**<u>Secondary Sources</u>**:

Paul Goldstein, 2 <u>Copyright</u> § 5.5.1 n. 16 (2d ed. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

David L. Hayes, <u>Advanced Copyright Issues on the Internet</u>,
7 Tex. Intell. Prop. L.J. 1 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11 William F. Patry, <u>Copyright Law and Practice</u> 171 (Supp. 2000) . . . . . . . . . . . . . . . . . . . . 8

## ARGUMENT

### POINT I

### THE COMPLAINT DOES NOT SET FORTH THE SPECIFIC ACTS
### AND TIMES OF ANY ALLEGED COPYRIGHT INFRINGEMENT

Plaintiffs do not frontally challenge the well established principle that a complaint in a copyright infringement case, to provide fair notice to a defendant, must allege at least some of the particular infringing acts and times of occurrence with *specificity*. Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 n.3 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir.), cert. denied, 513 U.S. 950, 115 S.Ct. 365 (1994); Marvullo v. Gruner & Jahr, 105 F.Supp.2d 225, 230 (S.D.N.Y. 2000); DiMaggio v. International Sports Ltd., 97 Civ. 7767, 1998 WL 549690 at *2 (S.D.N.Y. Aug. 31, 1998); Livnat v. Lavi, 96 Civ. 4967, 1997 U.S. Dist. LEXIS 13633 at *4-5 (S.D.N.Y. Sep. 9, 1997); Sharp v. Patterson, 03 Civ. 8772, 2004 U.S. Dist. LEXIS 22311 at *42 (S.D.N.Y. Nov. 3, 2004) ("to provide defendants fair notice of the claims against them [,] a plaintiff suing for copyright infringement may not rest on bare-bones allegations that infringement occurred").

Instead, plaintiffs attempt to sidestep this pleading requirement for copyright infringement claims by citing two cases which do not even involve pleadings, Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries, 272 F.3d 441 (7th Cir. 2001), and Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340 (1991). Both of these cases involved *judgments* rendered on summary judgment or after trial; neither case even addressed the sufficiency of the complaint. Plaintiffs' reliance on these cases is even more bizarre for the reasons that (a) Susan Wakeen involved an instance of an *actual* infringement, and (b) in Feist, the court held that there was no infringement at all.

Despite their agnosticism regarding the copyright pleading requirement, plaintiffs nevertheless argue that their Complaint more than satisfies it. <u>See</u> Plaintiffs' Opposition, p. 11. All the Complaint does, however, is allege in vague and conclusory fashion and upon information and belief in a single paragraph that defendant used an online media distribution system "to download [allegedly copyrighted recordings], to distribute [them] to the public, *and/or* to make [them] available for distribution to others."[1] <u>See</u> Complaint, ¶ 12 (italics added). As to the first two of these categories – "downloading" and "distributing"[2] – the Complaint makes no attempt to set forth any specific facts that would support such "[b]road, sweeping allegations of infringement." <u>Marvullo</u>, <u>supra</u>, 105 F.Supp.2d at 230; <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 240 (2d Cir. 2002) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

Plaintiffs respond by claiming that the index of music files set forth as screenshots in Exhibit B to the Complaint provides "a comprehensive list of the works that Defendant has infringed." <u>See</u> Plaintiffs' Opposition, p. 11. All that these passive screenshots purport to reflect, however, is that certain allegedly copyrighted recordings were simply *available* to a would be infringer; they do not reflect or evidence any actual instances of uploading or downloading through

---

[1]In their opposing papers, plaintiffs argue that in <u>Lindsay v. The Wrecked and Abandoned Vessel R.M.S. Titanic</u>, 97 Civ. 9248, 1999 U.S. Dist. LEXIS 15837 (S.D.N.Y. Oct. 13, 1999) – cited in our moving brief – this Court dismissed a copyright infringement claim "not simply for the use of 'and/or' in the complaint" but because of "a broad lack of specificity." <u>See</u> Plaintiffs' Opposition, p. 13. Plaintiffs thus unwittingly concede that copyright infringement claims must have specificity, and acknowledge that the use in that complaint of "and/or" to join conclusory allegations formed a part of the basis for the Court's ruling that the complaint failed to state a claim.

[2]As discussed in detail in Part II <u>infra</u>, the third category – making files *available* to others – simply does not state a legally viable claim of copyright infringement.

-2-

defendant's internet account.  As plaintiffs themselves concede, "Exhibit B to the Complaint is a copy of the shared folder as it appears on Defendant's computer."  <u>See</u> Plaintiffs' Opposition, p. 11. Indeed, it does not purport to be anything else; while the screenshots set forth a list of names and other text notations regarding files allegedly residing in the shared folder on defendant's computer, they do not reflect or evidence any instances of actual transfers of these files either *to* or *from* that computer.  Since the screenshots do not show any transfers, it is not surprising that they also do not show the dates and times of any transfers.  These deficiencies are fatal to plaintiffs' claim of copyright infringement.  <u>Marvullo</u>, <u>supra</u>, 105 F.Supp.2d at 230 (copyright infringement claim must allege time of infringement); <u>Brought to Life Music, Inc. v. MCA Records, Inc.</u>, 2003 WL 296561 at *1 (S.D.N.Y. Feb. 11, 2003) (granting Rule 12(b)(6) motion where "[p]laintiff ha[d] not attempted to describe 'by what acts and during what time' [the defendant] infringed the copyright"); <u>Plunket v. Doyle</u>, 2001 WL 175252 at *4-6 (S.D.N.Y. Feb. 22, 2001).

Even though the Complaint does not allege the time of any purported act of downloading or distribution, plaintiffs claim that it can still be sustained on the basis of an allegation of "continuing infringement" such as in <u>Franklin Electronic Publishers v. Unisonic Prod. Corp.</u>, 763 F.Supp. 1 (S.D.N.Y. 1991).  Plaintiffs' Opposition, p. 14.  This argument, however, suffers from the same illogic described above, in that the allegation is entirely conclusory.  Since the Complaint does

not allege even *one* instance of actual infringement, there is no basis for claiming that it sufficiently alleges a continuing one.[3]

Plaintiffs also rely on the order in Loud Records, LLC et al v. Does 1-74, 04 Civ. 9881 (S.D.N.Y. Oct. 12, 2005) – where Judge Sweet wrote: "The time of the identification of Doe is determined to be the date of filing the complaint and thereafter" – to argue that the Complaint satisfies the requirement of specifying the time of allegedly infringing acts.  It is respectfully submitted that this "determination" was either incomprehensible, or illogical.  First, the *identification* of the Loud defendant by internet protocol ("IP") address necessarily *preceded* the filing of the Loud complaint, and thus the date of identification could not have been "the date of filing the complaint and thereafter."  (In the instant case, plaintiffs claim on pages 6-7 of their opposing papers that their investigators located someone whose IP address was used to establish a certain screen name and *only then* did they file an action against her.)  Second, the sufficiency of the allegation would depend on setting forth the date and time of alleged *infringing activity* (i.e., actual instances of copying, downloading, uploading, distribution).  The time when the *IP address* of an alleged infringer is *identified* is simply not relevant to this issue.

Judge McMahon's decision in Elektra Entertainment Group, Inc. v. Santangelo, 05 Civ. 2414 (S.D.N.Y. Nov. 28, 2005) is inconsistent with the great weight of authority.  For the

_____

[3]Plaintiffs cite Carell v. Shubert Organization, Inc., 104 F.Supp.2d 236 (S.D.N.Y. 2000) for the proposition that they need not allege *each* individual act of copyright infringement. Assuming that to be the case, a plaintiff cannot escape the requirement of pleading at least *some* actual acts of infringement with specificity, which the Complaint utterly fails to do.  Meanwhile, plaintiffs' reliance on Carell is misplaced since the complaint in that case identified certain copyrighted works (makeup designs created for the cast of the Broadway musical Cats) which were *actually* infringed and identified specific national and international stage productions, videos and commercial products in which these designs were *actually* reproduced and used. Carell, supra, 104 F.Supp.2d at 251.

-4-

reasons discussed above, we are at a loss to understand how Judge McMahon concluded that a boilerplate complaint – identical to 16,000 other complaints (now about 18,000) – which did not identify a single act of infringement, could survive a dismissal motion based upon the purely conclusory allegation that defendant upon information and belief 'download plaintiffs' recordings, distributed them and/or made them available for distribution to others.'  The decision, which is not appealable, offers no satisfactory explanation for that leap.  Unless and until the Second Circuit rules on the issue, defendant respectfully requests that the Court be guided by the great weight of authority rather than by Judge McMahon's patently incorrect decision.[4]

## POINT II

### MERELY MAKING COPYRIGHTED WORKS
### AVAILABLE TO OTHERS IS NOT AN INFRINGING DISTRIBUTION

The third category of purported infringement alleged in the Complaint – merely making files available to others – simply does not state a legally viable claim of copyright infringement.  See, e.g., In re Napster, Inc., 377 F.Supp.2d 796, 802, 805 (N.D.Cal. May 31, 2005) (making copyrighted works *available* for downloading by others does not violate the copyright owner's right of distribution since infringement requires actual dissemination of copies).  At page 15 of their opposing papers, plaintiffs bizarrely claim that this principle of copyright law is

---

[4]Plaintiffs' reliance upon Sony Music Corp. v. Scott, 03 Civ. 6886 (S.D.N.Y. Feb. 18, 2005) is frivolous.  There, the Court granted the plaintiffs' *summary judgment motion* based upon the defendant's *admission* of infringement.  The legal sufficiency of the complaint was not at issue in Scott.  Plaintiffs' citation to BMG Music et al. v. Conklin, Case No. H-05-1482 (S.D. Tex. 2005), is unpersuasive.  That case involved a pro se defendant who made a motion to dismiss but did not submit reply papers or even a brief.  The court denied the motion in a one sentence order which omitted to state the basis for its order.  It goes without saying that this decision by a court in Texas is not controlling on this Court and – having been rendered without any explanation of the Court's rationale, and without that Court's having had the benefit of a full and balanced presentation of applicable legal authorities – is without persuasive authority.

"irrelevant", although it is they who assert a "making available" theory of infringement in the Complaint.

It is a cardinal rule of copyright law that "[i]nfringement of the distribution right requires an <u>actual</u> <u>dissemination</u> of ... copies." <u>Arista Records, Inc. v. MP3Board, Inc.</u>, 00 Civ. 4660, 2002 U.S. Dist. LEXIS 16165 at *14 (S.D.N.Y. Aug. 29, 2002) (emphasis added). Plaintiffs' "making available" theory, however, would not require them to present any evidence whatsoever of *actual* unauthorized transfers of music files between users of peer-to-peer ("P2P") networks like Kazaa. Plaintiffs' position is that the mere identification and listing of works available for copying constitutes unauthorized distribution without any further requirement on plaintiffs' part to demonstrate that even a single music file containing a sound recording or embedded musical composition was actually copied or transferred. Adoption of this theory would effectively rewrite the Copyright Act by expanding the exclusive rights of copyright owners in an insupportable manner. Any act of arguably "attempted" distribution of unauthorized copyrighted materials, without more, would become actionable. It would mean that a user who logged onto the Kazaa network momentarily, and whose file *names* (not the files themselves) were uploaded and listed on the ephemeral Kazaa index for such time period, would be liable for copyright infringement even if he or she logged off before any actual file uploads or downloads occurred. It would mean that a Kazaa user could be found liable for copyright infringement even for uploading a file name corresponding to a spoofed or otherwise corrupted or unusable file.

The implications of plaintiffs' theory are breathtaking. Without so much as proving a single act of unauthorized copying of their works, plaintiffs would have this Court impose

crushing, confiscatory penalties[5] upon users of P2P networks like Kazaa, many of whom have little or no understanding of copyright law. Fortunately, there is no basis in the Copyright Act for plaintiffs' "making available" theory of infringement.

Section 106(3) of the Copyright Act provides the copyright owner with the exclusive right to "distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3). This statutory language explicitly delineates and limits the exclusive right of distribution and unambiguously requires that there be a "sale or other transfer" of a "cop[y] or phonorecord[] of the copyrighted work" in order for there to be an infringement of the copyright owner's distribution right. A simple *offer* to distribute or transfer music files or make them *available* for distribution through a P2P network does not fit within the plain language of section 106(3).

Plaintiffs attempt to confuse the Court by confusing the statutory definition of "publication" – which is defined in section 101 to include "offering to distribute" a copy – with the copyright owners' exclusive right of "distribution," the delineation of which in section 106(3) does not include "offering to distribute." Publication and distribution are distinct concepts under the copyright law; the very fact that the definition of "publication" in section 101 of the Act includes an "offer[] to distribute," while the delineation of the distribution right in section 106(3) does not, is telling. Had Congress intended to define the scope of the section 106(3) distribution right to include "offering to distribute," it would have done so. It did not. See Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452 (2002) ("it is a general principle of statutory construction that when Congress

---

[5]Plaintiffs allege that 611 music files on defendant's computer were made available for distribution to others. Plaintiffs's Opposition, p. 6. At a statutory minimum of $750 per infringement (17 U.S.C. § 504(c)(1)), this would amount to **$458,250.00.**

includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acted intentionally and purposely in the disparate inclusion or exclusion"). <u>See</u> <u>also</u> <u>In re Napster</u>, <u>supra</u>, 377 F.Supp.2d at 804 ("If Congress wanted to make clear that the distribution right was broad enough to encompass making a work available to the public without proof of actual distribution, it was perfectly capable of doing so").

 Plaintiffs seek to avoid the plain language of the statute by seizing upon one sentence in the legislative history which suggests that section 106(3) establishes an exclusive right of "publication." <u>See</u> Plaintiffs' Opposition, p. 16. Read in context, however, that sentence merely acknowledges that section 106(3) protects, <u>inter</u> <u>alia</u>, a copyright owner's right of <u>first</u> publication – <u>i.e.,</u> his ability to decide when and if his work will be disseminated to the public for the first time – a right plainly not relevant to this case. That this is what the House Judiciary Committee had in mind is apparent from a second sentence in the House Report, *conveniently omitted from Plaintiffs' Opposition*: "Under this provision the copyright owner would have the right to control the <u>first public distribution</u> of an authorized copy . . . of his work." H.R. Rep. No. 94-1476, at 62 (1976) (emphasis added) (quoted in <u>Harper & Row, Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539, 552 (1985)).

 The legislative history is not at all inconsistent with the well-established principle, clearly reflected in the statutory language, that publication and distribution are distinct concepts with different meanings. "[T]he mere offering to sell copies of a novel to bookstores for subsequent sale to customers constitutes publication, but without actual distribution of copies of the novel, it would not violate the distribution right." 11 William F. Patry, <u>Copyright Law and Practice</u> 171 (Supp. 2000). "The language of section 106(3) intentionally tracks the first sentence of the Act's definition

of 'publication' in section 101…. [It] does not, however, follow the second sentence of the definition." Paul Goldstein, 2 Copyright § 5.5.1 n. 16 (2d ed. 1996). Congress made clear that a mere "offer" to distribute, such as by making a file available for copying, does not in and of itself constitute a violation of a copyright owner's exclusive right of distribution.

The cases cited by plaintiffs do not alter this conclusion. Plaintiffs place great reliance on Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199, 203 (4th Cir. 1997). Hotaling, however, is clearly distinguishable. In Hotaling, the defendant did not simply list a copyrighted work in its library catalogue and make it available for distribution to the public. As plaintiffs acknowledge on pages 16-17 of their opposition, the defendant placed *actual, multiple unauthorized copies* of the copyrighted work throughout its library branches. Here, on the other hand, the Complaint does not specify even *one* actual instance of unauthorized copying of plaintiffs' recordings.[6] The Hotaling decision also relied upon defendants' failure to maintain circulation records, and refused to reward the defendant libraries for their sloppy record-keeping. Moreover, the dissent in Hotaling (Hall, J.) observed that "none of" the acts of distribution identified in section 106(3) had been implicated by the conduct in suit, as "[t]he [defendant] did not sell or give an infringing copy to anyone." Hotaling, supra, 118 F.3d at 205.

Plaintiffs' citations to other cases claimed to be consistent with Hotaling grossly misportray those decisions. There is a critical factual distinction between those cases and the "making available" theory plaintiffs have put forward. In each of those cases, infringing material

---

[6]The Court in In re Napster, supra, distinguished Hotaling on the ground that the defendant in Hotaling "had made *actual, unauthorized copies* of the copyrighted genealogical material available to borrowers at its branch libraries." In re Napster, supra, 377 F.Supp.2d at 803 (italics added).

was uploaded by a user of a bulletin board service (BBS) or other online service to the defendants' servers – an act of *actual* distribution.  See, e.g., Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc., 982 F. Supp. 503 (N.D. Ohio 1997) (copyrighted image files *uploaded* onto BBS); Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distribs. and Northwest Nexus, Inc., 983 F. Supp. 1167 (N.D. Ill. 1997) (copyrighted clip art files *placed* on a website);  State v. Perry, 83 Ohio St. 3d 41, 697 N.E.2d 624, 628 (Ohio 1998) (copyrighted software *uploaded* onto a BBS); Brode v. Tax Management, Inc., 1990 U.S. Dist. LEXIS 998 (N.D. Ill. 1990) (copyrighted materials *uploaded* to Lexis database).

By contrast, the only thing uploaded in connection with making files available through Kazaa is an index of the names of the files and certain other textual information; the files themselves remain on the users' computers.

Plaintiffs also rely on dictum from an earlier appellate decision on a preliminary injunction motion in A&M Records, Inc . v . Napster. Inc., 239 F.3d 1004 (9th Cir. 2001) to the effect that "Napster users who upload file names to the search index for others to copy violate Plaintiffs' distribution rights."  A&M Records, supra, 239 F.3d at 1014.   The district court had preliminarily found that Napster had been used to upload and download copyrighted music; the district court did not base its injunction on such music merely being made available.  A&M Records, Inc. v. Napster, Inc., Nos. 99-5183, 00-0074, 2000 WL 1009483, at *1 (N.D. Cal. July 26, 2000).  On appeal, the Ninth Circuit necessarily relied upon the record created at the district court level and made no fact findings of its own.  Because the defendant *did not dispute that an infringement had in fact occurred*, the Ninth Circuit did not need to review that aspect of the district court's ruling, which rendered the quoted sentence mere dictum.  In a subsequent proceeding in the same case in the district court, plaintiffs argued to Judge Patel that this dictum meant that the mere "making

available" of copyrighted works violated section 106(3) even in the absence of actual copying or transfer of the works.  The district court rejected this argument, holding that *there could be no infringement without actual copying or transfer.*  In re Napster, supra, 377 F.Supp.2d at 802 ("There is no dispute that merely listing a copyrighted musical composition or sound recording in an index of available files falls short of satisfying these 'actual dissemination' or 'actual transfer' standards").

Finally, there is no merit to plaintiffs' outlandish contention that the WIPO Copyright Treaty grants them a right, enforceable by this Court, to prohibit the mere offering or making available of a copyrighted work in the absence of actual dissemination or transfer of a copy of the work.  "International treaties are not presumed to create rights that are privately enforceable." Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 968 (4th Cir. 1992).  Only if a treaty "evidences an intent to provide a private right of action" will the courts find it to be self-executing and privately enforceable in the absence of implementing legislation from Congress.  Hamdi v. Rumsfeld, 316 F.3d 450 (4th Cir. 2003); Dreyfus v. Von Finck, 534 F.2d 24, 30 (2d Cir. 1976) ("It is only when a treaty is self-executing, when it prescribes rules by which private rights may be determined, that it may be relied upon for the enforcement of such rights"); Guaylupo-Moya v. Gonzales, 423 F.3d 121, 133 (2d Cir. 2005) ("when a treaty is not self-executing, the treaty does not provide independent, privately enforceable rights").  The WIPO Copyright Treaty is not self executing and is dependent on implementing legislation since it sets forth no rules for determining private rights and, in fact, is dependent upon the contracting parties to "undertake to adopt, in accordance with their legal systems, the measures necessary to ensure the application of this Treaty." WIPO Copyright Treaty, art. 14(1); Universal City Studios, Inc. v. Corley, 273 F.3d 429, 440 (2d

-11-

Cir. 2001) (noting that Congress enacted the Digital Millennium Copyright Act (the "DMCA") in 1998 to implement the WIPO Copyright Treaty).

Where, as here, "a treaty is not self-executing it is not the treaty but the implementing legislation that is effectively 'law of the land.'" Hopson v. Kreps, 622 F.2d 1375, 1380 (9th Cir. 1980) (emphasis added). By plaintiffs' admission, the legislation that Congress adopted to implement the WIPO Copyright Treaty (i.e., the DMCA) did not amend section 106 of the Copyright Law. See Plaintiffs' Opposition, p. 21.[7] As already discussed, section 106 does not make actionable the mere offering or making available of a copyrighted work. Thus, plaintiffs' reliance upon the WIPO Copyright Treaty to resurrect their claim is completely unwarranted.[8]

Plaintiffs' "making available" theory would eviscerate the requirement of demonstrating an actual "sale or other transfer" of a "copy" of each allegedly infringed work. It would, moreover, engraft onto section 106(3) a heretofore unrecognized right to proscribe a mere "offer to distribute." Plaintiffs' "making available" theory of infringement must therefore be rejected.

---

[7]Plaintiffs' argument that section 106, although unamended, should be reinterpreted in light of subsequent congressional implementation of the WIPO Copyright Treaty is also unwarranted. The plaintiffs in Napster, supra, made a similar argument, contending that the Artists' Rights and Theft Prevention Act of 2005 called for a reinterpretation of section 106. Judge Patel expressly rejected this argument, holding that the only legislative history and intent that mattered, for purposes of construing section 106, were those of the Congress that passed that section in 1976. In re Napster, supra, 377 F.Supp.2d at 805.

[8]Even if the "making available" right in the WIPO Copyright Treaty was enforceable, its meaning and scope have never been litigated and are subject to dispute. One commentator has argued that the term is meant to reach those who use bulletin board services (BBS) to make files available on the internet. See David L. Hayes, Advanced Copyright Issues on the Internet, 7 Tex. Intell. Prop. L.J. 1, 37-38 (1998). Such a use necessarily involves an initial upload (distribution) of files from a user's computer to a BBS, from which files may be downloaded by others, something which is not at issue here.

By their own admission, plaintiff's "investigation" consisted of nothing more than their logging into the Kazaa network and viewing a list of files. They did not observe any transfers of files to or from defendant's computer.[9] Since plaintiffs have no basis for alleging *any* specific acts and times of copyright infringement by defendant, they cannot plead a claim for copyright infringement; leave to replead would be a futile exercise. The Court should therefore dismiss the Complaint with prejudice for failure to state a claim upon which relief can be granted. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (dismissing without leave to replead because nothing in the complaint "suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").[10]

---

[9]Realizing that the Complaint is devoid of any actual instances of infringement, plaintiffs apparently seek to fall back on the activities of their investigators who allegedly logged into the Kazaa network and viewed files on defendant's computer. Such a position would violate the rule that a copyright owner cannot infringe his own copyright. RSO Records v. Peri, 79 Civ. 5098, 1980 U.S. Dist. LEXIS 13490 (S.D.N.Y. Sep. 5, 1980). According to plaintiffs, this rule does not apply here since "Defendant was downloading and distributing Plaintiffs' copyrighted works independent of any action by Plaintiffs." See Plaintiffs' Opposition, p. 24. However, plaintiffs do not allege – and have no basis to allege – any actual downloading or distributing of works with the possible exception of files viewed by plaintiffs' own investigators, an act that by definition was *not* "independent of any action by Plaintiffs." This Court has rejected the argument that the viewing of files by investigators working for record company plaintiffs constitutes distribution "to the public" under section 106(3). See Arista Records, supra, 00 Civ. 4660, 2002 U.S. Dist. LEXIS 16165 at *13-14.

[10]In the unlikely event that the Court were not to grant the within motion, it should certify such disposition for an immediate appeal on the ground that the case involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal would materially advance the ultimate termination of this litigation, as well as the hundreds of similar cases pending before courts in the Second Circuit.

## <u>CONCLUSION</u>

The Court should grant the within motion in all respects.

Respectfully submitted,

BELDOCK LEVINE & HOFFMAN LLP
Attorneys for defendant Tenise Barker


By:_____s/ Morlan Ty Rogers_____
        Morlan Ty Rogers (MR 3818)
99 Park Avenue
New York, NY 10016
(212) 490-0400

*Of Counsel*:
Ray Beckerman
Morlan Ty Rogers

-14-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ELEKTRA ENTERTAINMENT GROUP INC. et al.,                    No. 05 CV 7340 (KMK)

               Plaintiffs,

     -against-

DENISE BARKER,                                              **AFFIDAVIT
                                                           OF SERVICE**
               Defendants.

-------------------------------------------------------------------x

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

     NIKIYA  SCOTT, being duly sworn, deposes and says:

     1.    I am not a party to the within action; am over 18 years of age and am employed by Beldock

Levine & Hoffman LLP, 99 Park Avenue, 16th Floor, New York, New York 10016.

     2.    On February 6, 2006, I served the within REPLY MEMORANDUM OF LAW OF

DEFENDANT TENISE BARKER IN SUPPORT OF HER MOTION TO DISMISS THE COMPLAINT upon plaintiffs

by dispatching a copy of same by FedEx overnight delivery service to the attorneys for said parties at their last known

address:  Cowan Liebowitz & Latman, P.C., 1133 Avenue of the Americas, New York, New York 10036-6799, by

depositing same, enclosed in a properly addressed wrapper into the custody of FedEx Corporation for overnight delivery,

prior to the latest time designated by said overnight delivery service for overnight delivery.

                                     _____
                                          NIKIYA  SCOTT

Sworn to before me this
6th day of February, 2006

_____
     Notary Public

**MORLAN TY ROGERS**
**Notary** Public, State of New **York**
NO. 02RO6116188
**Qualified** in Queens County
**Commission** Expires September 20, 20_08_