UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                                                               )
ELEKTRA ENTERTAINMENT GROUP INC.,    )
*et al.,*                                                      )
                                    Plaintiffs,                )
                                                               )    05 CV 7340 (KMK)
                        v.                                     )
                                                               )
DENISE BARKER,                                                 )
                                                               )
                                    Defendant.                 )
                                                               )
-------------------------------------------------------------- x

**BRIEF OF *AMICI CURIAE* COMPUTER & COMMUNICATIONS INDUSTRY
ASSOCIATION AND US INTERNET INDUSTRY ASSOCIATION IN CONNECTION
<u>WITH DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>**

Andrew P. Bridges
**WINSTON & STRAWN LLP**
101 California Street, 39th Floor
San Francisco, California 94111
Ph:  (415) 591-1482
Fax:  (415) 591-1400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii-iii

INTRODUCTION AND SUMMARY OF ARGUMENT ..............................................................1

INTERESTS OF THE AMICI.....................................................................................................2

ARGUMENT................................................................................................................................4

I.  THE PLAIN LANGUAGE OF SECTION 106(3) OF THE COPYRIGHT ACT
    SPECIFICALLY DEFINES THE DISTRIBUTION RIGHT ...........................................4

II. PLAINTIFFS' BROAD CONCEPTION OF "MAKING AVAILABLE" IS NOT
    EMBRACED BY THE DISTRIBUTION RIGHT OF SECTION 106(3) AND
    CANNOT SUPPLANT OR EXPAND THAT RIGHT. ......................................................6

    A.  Not All Instances of "Making Available" Constitute "Distributions" Under
        Section 106(3), And Allegations Of "Making" Works "Available" Do Not
        Allege "Distributions." ..........................................................................................6

    B.  Courts That Have Carefully Examined The Statute Have Limited The
        Distribution Right To Conduct Specifically Identified In Section 106(3)..................9

III. EXPANSION OF THE DISTRIBUTION RIGHT POSES A THREAT OF
     UNINTENDED CONSEQUENCES TO COMMERCE....................................................10

IV. THE DISTRIBUTION RIGHT NEED NOT BE EXPANDED TO PROVIDE
    ADDITIONAL RIGHTS OR REMEDIES FOR COPYRIGHT OWNERS BECAUSE
    THEY HAVE ADEQUATE RIGHTS AND REMEDIES UNDER OTHER
    PROVISIONS OF COPYRIGHT LAW..........................................................................12

V.  THE WIPO DIGITAL TREATIES DO NOT CALL FOR AN EXPANSION OF
    THE DISTRIBUTION RIGHT......................................................................................14

CONCLUSION...........................................................................................................................15

i

# TABLE OF AUTHORITIES

## CASES

*A&M Records, Inc., v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)............................9 n.7

*Agee v. Paramount Communications, Inc.*, 59 F.3d 317 (2d Cir. 1995)...............10, 10 n.8

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994).........................................12 n.10

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989).................................4

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).......................8, 9

*Eldred v. Ashcroft*, 537 U.S. 186 (2003)............................................................................3

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159
  (2d Cir. 1971)...........................................................................................................11 n.9

*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966)...........................................3

*Harper & Row v. The Nation Enterprises*, 471 U.S. 539 (1985)...............................12 n.10

*In re Napster*, 377 F.Supp.2d 796 (N.D. Cal. 2005)...................................................9, 9 n.7

*Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc.*, 75 F.Supp.2d 1290
  (D. Utah 1999) ..........................................................................................................11 n.9

*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)....................3

*Stewart v. Abend*, 495 U.S. 207 (1990)...............................................................................3

## STATUTES

17 U.S.C. § 101....................................................................................................5, 10

17 U.S.C. § 106.........................................................................................................4

17 U.S.C. § 106(1) ...............................................................................................12, 13

17 U.S.C. § 106(2) .....................................................................................................12

17 U.S.C. § 106(3) ................................................................................................ *passim*

17 U.S.C. § 106(4) ...............................................................................4, 7 n.4, 8, 9, 12, 14

ii

17 U.S.C. § 106(5) ...............................................................................4, 7 n.4, 8, 9, 12, 14

17 U.S.C. § 106(6) ...............................................................................4, 7 n.4, 8, 9, 12, 14

17 U.S.C. § 107-122 ...........................................................................................................4

17 U.S.C. § 201(d)(2) ......................................................................................................12

17 U.S.C. § 504(c)(2)........................................................................................................13

17 U.S.C. § 901(a)(4).........................................................................................................8

35 U.S.C. § 2719(a) ...........................................................................................................8

## OTHER AUTHORITIES

*Circular 92,* Copyright Law of the United States of America iii-viii (June 2003),
    http://www.copyright.gov/title 17/circ92.pdf ...............................................................4

M. Nimmer & D. Nimmer, 2 *Nimmer on Copyright,* § 8.11[A] (1993)............................10

M. Nimmer & D. Nimmer, 2 *Nimmer on Copyright* § 8.01[A] (2005)..............................12

*The American Heritage Dictionary of the English Language* 1025, 1020, 1529,
    1591 (3d ed.1992) .....................................................................................................6 n.3

U.S. Const. art. I, § 8, cl.8.....................................................................................................3

Wikipedia, Fallacy of the Undistributed Middle,
    http://en.wikipedia.org/wiki/Fallacy_of_the_undistrubuted_middle.......................7 n.5

WIPO Copyright Treaty......................................................................................................14

WIPO Performances and Phonograms Treaty ...................................................................14

NY:1013415.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                    )
                                                    )
ELEKTRA ENTERTAINMENT GROUP INC.,    )
*et al.,*                                           )
                          Plaintiffs,               )
                                                    )    05 CV 7340 (KMK)
              v.                                    )
                                                    )
DENISE BARKER,                                      )
                                                    )
                          Defendant.                )
                                                    )
------------------------------------------------------------- x

### BRIEF OF *AMICI CURIAE* COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION AND US INTERNET INDUSTRY ASSOCIATION IN CONNECTION WITH DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

### INTRODUCTION AND SUMMARY OF ARGUMENT

Computer & Communications Industry Association and US Internet Industry Association ("Amici") file this brief as *amici curiae* to address an issue of critical importance in copyright law, the scope of the distribution right in section 106(3) of the Copyright Act, 17 U.S.C. § 106(3), that extends far beyond the particular facts of this case. This brief has been prompted by Plaintiffs' argument that there is a general "making available" right under U.S. copyright law. *See* Plaintiffs' Opposition to Motion to Dismiss at 15-22. Plaintiffs offer a misguided analysis of the section 106(3) distribution right. Plaintiffs' argument seeks to expand the concept of "distribution" to incorporate an overbroad concept of "making available" in order to challenge Defendant for having sound recordings on her computer in a "shared file folder" available to others over the Internet via a peer-to-peer file sharing system. Such an expansion would allow Plaintiffs to avoid having to allege or prove that Defendant actually *distributed any copies or*

*phonorecords of copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending* as required by the plain language of section 106(3).

Amici do not take a position on whether Defendant is liable for copyright infringement in this case. Nor do they take a position on whether Plaintiffs have stated a cause of action for copyright infringement. Amici focus, instead, on the Plaintiffs' effort to expand the section 106(3) "distribution" right of copyright owners under the Copyright Act. Such an expansion of the section 106(3) distribution right would both ignore the plain language and structure of the Copyright Act and distort copyright law in a way that would threaten varied interests across the American economy and society.

## INTERESTS OF THE AMICI

Amici are associations of companies that make communications over the Internet possible.[1] Their businesses depend on intellectual property rights. Amici believe that their members are far more often plaintiffs than defendants in intellectual property litigation.

---

[1]    Computer & Communications Industry Association ("CCIA") is a nonprofit membership organization for a wide range of companies in the computer, Internet, information technology, and telecommunications industries, represented by their senior executives. For more than 30 years CCIA has promoted open markets, open systems, open networks, and full, fair, and open competition. Its companies vary widely in size and operate both domestically and globally. Members, identified on Exhibit A to this memorandum, include computer and communications companies, equipment manufactures, software developers, service providers, re-sellers, integrators, and financial service companies. Together they employ almost one million workers and generate nearly $250 billion in annual revenue.

US Internet Industry Association ("USIIA") is a North American trade association for Internet commerce, content and connectivity. Founded in 1994, USIIA advocates effective public policy on Internet issues and provides its members with essential business news, information, support and services. With members of every size, engaged in virtually every facet of the Internet, USIIA promotes a business environment in which Internet companies can thrive. A general description of USIIA's members is attached to this memorandum as Exhibit B.

2

Amici well understand, however, that intellectual property laws deserve respect not only for the powers and rights they confer but also for the limits they set. Careful and thoughtful construction and application of intellectual property laws serve the ultimate goal of those laws, which is to "promote the Progress of Science and useful Arts" as reflected in Art. I., section 8, clause 8 of the U.S. Constitution.

While the establishment of intellectual property rights provides important incentives for creativity and innovation, the undue extension and overenforcement of those rights may have the opposite effect, of choking creativity and innovation. Efforts by Plaintiffs to rewrite copyright law should not be countenanced by a court. The result Plaintiffs seek must be sought from Congress. Congress, not the courts, has the proper role of establishing copyright policy through the laws it enacts. Congress, not the courts, has the means to hear from, and to evaluate the interests and views of, a wide spectrum of participants in the American economy and society. The Supreme Court has consistently articulated the importance of judicial deference to Congress as the source of copyright law. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984). As the Court recently stated:

> it is generally for Congress, not the courts, to decide how best to pursue the Copyright Clause's objectives. *See Stewart v. Abend*, 495 U.S., at 230, 110 S. Ct. 1750 ("Th[e] evolution of the duration of copyright protection tellingly illustrates the difficulties Congress faces . . . . [I]t is not our role to alter the delicate balance Congress has labored to achieve."); *Sony*, 464 U.S. at 429, 104 S. Ct. 774 ("[I]t is Congress that has been assigned the task of defining the scope of [rights] that should be granted to authors or to inventors in order to give the public appropriate access to their work product."); *Graham*, 383 U.S., at 6, 86 S. Ct. 684 ("Within the limits of the constitutional grant, the Congress may, of course, implement the stated purpose of the Framers by selecting the policy which in its judgment best effectuates the constitutional aim.")

*Eldred v. Ashcroft*, 537 U.S. 186, 212-13 (2003).

3

**ARGUMENT**

**I.    THE PLAIN LANGUAGE OF SECTION 106(3) OF THE COPYRIGHT ACT SPECIFICALLY DEFINES THE DISTRIBUTION RIGHT.**

"The starting point for our interpretation of a statute is always its language." *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 739 (1989) (Marshall, J., interpreting the Copyright Act for a unanimous Court). That is especially important with copyright law, which Congress comprehensively overhauled in 1976 and has amended *over 50 times* since then. *See* "Circular 92," Copyright Law of the United States of America iii-viii (June 2003) (identifying amendments from 1976 until June 2003) (available at pages 2-8 of PDF file at http://www.copyright.gov/title17/circ92.pdf); *see also* http://www.copyright.gov/title17/ (identifying five further amendments since June 2003).

Section 106 of the Copyright Act identifies five exclusive rights of a copyright holder. By shorthand reference they are typically described as the rights of reproduction, adaptation, distribution, public performance, and public display. The rights, however, are very specific: in some cases, for example, rights exist only with respect to certain types of works. *See* 17 U.S.C. §§ 106(4)-(6) (identifying specific types of works eligible for certain rights).[2]

Clause (3) of section 106, which establishes the distribution right, is itself very specific. Taken together with the preamble of section 106, that provision states:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
> . . .
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending . . . .

---

[2] For example, the section 106(4) right applies only to "literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works"; the section 106(6) right applies only to "sound recordings." 17 U.S.C. §§ 106(3) and (6).

4

17 U.S.C. § 106(3). The statutory language has three important elements. First, the right under section 106(3) is to distribute *copies or phonorecords* of copyrighted works. Second, the right is to distribute copies or phonorecords *to the public*. Third, the right is to distribute copies or phonorecords to the public *by sale or other transfer of ownership, or by rental, lease, or lending.*

The "distribution" right under the Act is defined by its elements, and the statutory protection is neither expansive nor elastic. The right under section 106 is to distribute *certain* things, to *certain* recipients, in a *certain* way.

The first and third elements are important both to a narrow question in this case, whether possession of an index of files available for transmission by a peer-to-peer system constitutes a distribution under section 106(3), and to the broader question implicated by Plaintiffs' argument, namely whether a variety of activities over the Internet implicate the section 106(3) distribution right merely because they may constitute a "making available" of copyrighted works. As to the first element, "copies" and "phonorecords" are defined terms in section 101 of the Copyright Act, 17 U.S.C. §101. That section states, in relevant parts:

> "Copies" are material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "copies" includes the material object, other than a phonorecord, in which the work is first fixed.
>
> . . .
>
> "Phonorecords" are material objects in which sounds, other than those accompanying a motion picture or other audiovisual work. are fixed by any method now known or later developed, and from which the sounds can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "phonorecords" includes the material object in which the sounds are first fixed.

The statute defines "copies" and "phonorecords" as material objects. Distribution of "copies" or "phonorecords," therefore, must mean the distribution of material objects.

5

The third element of the section 106(3) right is a distribution of copies or phonorecords

"*by sale or other transfer of ownership, or by rental, lease, or lending.*"  Those terms are not

defined in the Copyright Act, but their meanings are plain.[3]

Amici take no position on whether Plaintiff in this case has sufficiently alleged any of

these activities by Defendant.  They do urge the Court, however, to determine that any violation

of section 106(3) must flow from the actual conduct of one of those activities.

## II.    PLAINTIFFS' BROAD CONCEPTION OF "MAKING AVAILABLE" IS NOT EMBRACED BY THE DISTRIBUTION RIGHT OF SECTION 106(3) AND CANNOT SUPPLANT OR EXPAND THAT RIGHT.

Plaintiffs' argument, if accepted, would have the effect of substituting a broad and

undefined concept of "making available" in place of the clearly defined "distribution" right in

section 106(3).  This Court should not allow Plaintiffs to rewrite the statute in this fashion.

### A.    Not All Instances Of "Making Available" Constitute "Distributions" Under Section 106(3), And Allegations Of "Making" Works "Available" Do Not Allege "Distributions."

Amici do not dispute that the activities identified in section 106(3) -- namely sale,

transfer of ownership, rental, lease, and lending -- constitute forms of "making available."  The

---

[3] "Sale" involves an "exchange of goods or services for an amount of money or its equivalent." *The American Heritage Dictionary of the English Language* 1591 (3d ed. 1992). ("For sale" is a phrase indicating availability for purchase, *see id.,* but the sale itself is not the mere availability for purchase – or else *sales* taxes would apply to mere inventories of goods offered for sale instead of transactions.) A "transfer of ownership" requires a change of ownership from one person to another, and the substitution of one owner for another (not the multiplication of ownerships). Rental involves the payment of "rent," which is "[p]ayment, usually of an amount fixed by contract, made by a tenant at specified intervals in return for the right to occupy or use the property of another . . . a similar payment made for the use of a facility, equipment, or service provided by another." *Id.* at 1529. "Lease" involves "[a] contract granting use or occupation of property during a specified period in exchange for a specified rent." *Id.* at 1025. To "lend" is "[t]o give or allow the use of temporarily on the condition that the same or its equivalent will be returned." *Id.* at 1030.

6

converse, however, is not true:  not all instances of "making available," however, constitute

distributions under section 106(3).[4]

To the extent Plaintiffs are arguing that any activities that may be vaguely described as

"making available" a work to the public -- such as an unconsummated offer to transmit a sound

recording file -- fall within the distribution right of section 106(3), their argument is seriously

misguided and logically flawed.  The logical error is the well-known "fallacy of the undistributed

middle."[5] As applied to Plaintiffs' distribution arguments in this case, the fallacy is as follows:

A.    All distributions constitute "making available."

B.    An unconsummated offer to share music constitutes a "making available."

C.    Therefore, an unconsummated offer to share music is a distribution.

Specifically, Plaintiffs argue that the presence of sound recording files in a "shared file" folder of

a person's peer-to-peer network software constitutes a "making available" by that person that is

therefore a "distribution" in violation of section 106(3).  *See* Plaintiffs' Opposition to Motion to

Dismiss at 15, 20.  The presence of recordings in the "shared file" folder, however, amounts to

no more than a potential for a transmission or an offer to transmit the files.  Leaving aside

whether the person is making *material objects* ("copies" or "phonorecords") available, the *mere

availability or offer* of files for potential upload to a network (and potential download by another

---

[4] For example, as discussed below, public displays and public performances (governed by
sections 106(4)-(6) of the Copyright Act) make works "available" to the public but are not
distributions under section 106(3).
[5] An example of the fallacy is as follows:
    A.    All students carry backpacks.
    B.    My grandfather carries a backpack.
    C.    Therefore, my grandfather is a student.
Wikipedia, Fallacy of the Undistributed Middle, http://en.wikipedia.org/wiki/Fallacy_of_the_
undistributed_middle.

7

user of the network) is not a "sale or other transfer of ownership, or . . . rental, lease, or lending."
It is therefore not a section 106(3) distribution.

Both the language and the structure of the Copyright Act justify this conclusion. First,
Congress well knows how to distinguish *acts* from *offers to act*. Indeed, the Copyright Act itself
makes that distinction in another section. In section 901(a)(4), relating to protection of
semiconductor chip products, the Copyright Act states as follows:

> [T]o "distribute" means ***to sell***, lease, bail, or otherwise transfer, ***or to offer to sell***, *lease,*
> *bail, or otherwise transfer* . . . .

17 U.S.C. § 901(a)(4) (emphasis added). The same distinction occurs in the Patent Act. In that
act the core infringement provision states as follows:

> Except as otherwise provided in this title, whoever without authority makes, uses, ***offers***
> ***to sell, or sells*** any patented invention, within the United States, or imports into the
> United States any patented invention during the term of the patent therefore, infringes the
> patent.

35 U.S.C. § 271(a) (emphasis added).[6] The omission of "offer to sell" from the definition of the
distribution right in section 106(3) is meaningful.

Second, because other copyright rights involve aspects of "making available," there is no
reason to find all kinds of "making available" activities to be "distributions" under section
106(3). Displaying a work publicly (which implicates section 106(5)) makes that work available
to the public in that the public can enjoy the work. Performing that work publicly (which
implicates sections 106(4) or 106(6)) similarly makes that work available to the public. Even
though "public displays" and "public performances" make works available to the public, they do

---

[6] As noted above, Congress has the ability to amend the Copyright Act, and the Supreme Court
has deferred to Congress' role in enacting and emending the law. The Supreme Court rejected a
previous attempt to create a "mutant copyright," noting that "[w]hen Congress has wished to
create such an addition to the law of copyright, it has done so with much more specificity . . . ."
*Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 34 (2003).

not constitute "distributions." Plaintiffs' argument that any "making available" constitutes a

"distribution" under section 106(3) would make the public performance and public display rights

of sections 106(4), (5), and (6) superfluous. "A statutory interpretation that renders another

statute superfluous is of course to be avoided." *Dastar*, 539 U.S. at 35. That the redundancy

would appear within subsections *of the same section of the same statute* only makes evident that

the Plaintiffs' proposed interpretation is untenable.

### B.    Courts That Have Carefully Examined The Statute Have Limited The Distribution Right To Conduct Specifically Identified In Section 106(3).

Defendant's reply brief correctly addresses the relevant case law regarding the Plaintiffs'

effort to expand the distribution right under Section 106(3). Without repeating Defendant's

arguments, Amici point out that the decision in *In re Napster*, 377 F.Supp.2d 796 (N.D. Cal.

2005), is particularly instructive. The decision focused squarely on whether a list of files

available for download was a "making available" in violation of the distribution right under

section 106(3). The court rebuffed the efforts of record labels, like Plaintiffs here, to expand the

distribution right to cover other forms of "making available." Amici urge this Court to follow

the well-reasoned opinion in *In re Napster.*[7]

Amici recognize that some cases, discussed by the parties, have summarily concluded

that a mere availability of an upload may constitute a distribution. Those cases generally have

---

[7] That case was follow-on litigation by record companies against Napster's investors following
earlier rulings in the underlying litigation against Napster itself that was presided over by the
same district judge. Plaintiffs here and in other cases cling to an *obiter dictum* by the Ninth
Circuit in an appeal of the underlying *Napster* litigation stating that Napster users who uploaded
file titles to indexes violated the "distribution right." *See A&M Records, Inc., v. Napster, Inc.,*
239 F.3d 1004, 1013 (9th Cir. 2001). The Ninth Circuit gave no analysis, no authority, and no
extended discussion relating to that brief *dictum*. In fact, the district judge in the follow-on case
sidestepped that *dictum* by saying "Defendants do not ask the court to revisit the legal issues
surrounding plaintiffs' 'uploading' and 'downloading' theories. Rather, they assert that plaintiffs
have failed to submit enough evidence in support of these theories to [avoid summary
judgment]." The court then ruled that there was sufficient evidence to avoid summary judgment.
*In re Napster,* 377 F.Supp.2d. at 806.

9

displayed no extended analysis or reasoning, and they have often occurred in contexts where the courts did not benefit from vigorous briefing by well-matched combatants. The *in re Napster* decision, by contrast, is a landmark for reasoned analysis on this point.

An important case from the Second Circuit that none of the parties cited also provides guidance on this issue. In *Agee v. Paramount Communications, Inc.*, 59 F.3d 317 (2d Cir. 1995), the court of appeals considered, among other things, a claim for violation of the distribution right under section 106(3) arising from the satellite transmission of a television commercial incorporating plaintiff's music in the commercial's soundtrack. The Second Circuit ruled that a transmission of the work was a public performance and not a distribution. The court of appeals stated: "distribution is generally thought to require transmission of a 'material object' in which the sound recording is fixed: a work that is of 'more than transitory duration.' *See* 17 U.S.C. §101 (defining "copy");  M. Nimmer & D. Nimmer, 2 *Nimmer on Copyright,* §  8.11[A] (1993) (distribution right is right 'publicly to sell, give away, rent or lend any material embodiment of copyrighted work')." *Agee,* 59 F.3d at 325.  While the Second Circuit was "unwilling to say that disseminations must always be in physical form to constitute 'distributions,'" *see id.,*  the transmission was a "making available" to the public of the copyrighted song. That did not suffice, however, to make it a distribution under section 106(3).[8]

## III.  EXPANSION OF THE DISTRIBUTION RIGHT POSES A THREAT OF UNINTENDED CONSEQUENCES TO COMMERCE.

Plaintiffs' proposed expansion of the distribution right would sweep into the reach of copyright law many activities not now covered by copyright law.  Under such an elastic interpretation and ill-defined standard, the Internet connections and equipment that members of

---

[8] Nor was there any indication that the Second Circuit relaxed a requirement of *actual* dissemination of a copy or phonorecord for a violation of the distribution right under section 106(3). To the contrary, when the court of appeals cited section 106(3), it referred to actual transmission of a material object, not a mere offer to transmit. *See Agee,* 59 F.3d at 325.

NY:1013415.1

Amici furnish may render them vulnerable to accusations that they "make available" a variety of content, including copyrighted materials, to users. Such activities, *e.g.,* providing Internet connections, however, do not constitute distributions within the scope of section 106(3). If a vague conception of "making available" were substituted for the clear statutory provision of section 106(3), the boundaries of the right would become indeterminate and unpredictable, creating chilling effects on members of Amici and virtually every other participant on the Internet. For example, companies routinely include in their web pages hyperlinks that enable persons to navigate easily to other sites throughout the web by use of browser software. Indeed, the web is a collection of hyperlinks. Even though the use of hyperlinks makes content located elsewhere available to a web user, it does not constitute a *distribution* of that content under section 106(3).[9]

In addition to expanding the scope of copyright, Plaintiffs' "making available" argument would also sweep many activities pertaining to *other* rights of a copyright owner into the concept of "distribution." This would upset the expectations of, and jeopardize, those who have bargained for licenses of those other rights.

The Copyright Act affords copyright holders not one unitary right but several distinct and severable rights. For example, one person can own the reproduction right in a work under

---

[9] While in a few cases courts have found the use of hyperlinks to violate copyright law, those cases generally involve instances where defendants have intentionally used hyperlinks to induce or cause copyright infringement (typically a violation of the reproduction right under section 106(1)), which is actionable as classic contributory infringement. *See Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc.,* 75 F.Supp.2d 1290 (D. Utah 1999). (The traditional formulation of contributory infringement is that "[o]ne who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another, may be held liable as a 'contributory infringer.'" *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971).) There is no suggestion that the mere use of a hyperlink, without knowledge and intent that it would lead to copyright infringement, constitutes a "distribution" of the linked content under section 106(3).

11

section 106(1) while another person can own the public performance right in the same work

under section 106(4).  *See* 17 U.S.C. § 201(d)(2) (individual rights under section 106 may be

transferred separately).  Companies and individuals often enter into contracts that pertain to only

one of the several rights in a particular work.  For example, an owner of all rights can license the

reproduction right under section 106(1) but not the derivative works (adaptation) right under

section 106(2).  *See* M. Nimmer & D. Nimmer, 2 *Nimmer on Copyright,* § 8.01[A] at 8-17

(2005).

   If all instances of "making available" were considered part of the "distribution" right in

section 106(3), then licensees of the public performance rights under sections 106(4) or 106(6) or

the public display right under section 106(5) would fall into a trap.  Notwithstanding those

licenses, under Plaintiffs' argument the licensees would be unprotected because they would also

be engaging in an unlicensed distribution as a consequence of their making the work available.

The Copyright Act should not be construed so expansively as to create a trap for licensees in

such circumstances.  Many contracts have taken into account clear expectations regarding rights

and obligations based on unambiguous statutory language regarding the various rights of a

copyright holder.

**IV.    THE DISTRIBUTION RIGHT NEED NOT BE EXPANDED TO PROVIDE
        ADDITIONAL RIGHTS OR REMEDIES FOR COPYRIGHT OWNERS
        BECAUSE THEY HAVE ADEQUATE RIGHTS AND REMEDIES UNDER
        OTHER PROVISIONS OF COPYRIGHT LAW.**

   Concern for copyright owners does not require an expansion of the distribution right.

Existing law gives copyright holders a well-stocked arsenal against Internet-based infringers.  To

the extent *downloaders* violate copyright law,[10] it is through violation of the reproduction right

---

[10] Amici take no position on whether downloads in this case are protected by the fair use
limitation on a copyright holder's rights pursuant to section 107 of the Copyright Act, 17 U.S.C.
§ 107.  Evaluation of claimed fair use is extraordinarily fact-specific, requiring case-by-case

under section 106(1).  To the extent *uploaders* violate copyright law, the violation occurs when the "upload" results in a corresponding "download" at the other end of the transmission, again a violation of the reproduction right under section 106(1), for which the uploader may bear contributory infringement liability.

Plaintiffs wish to establish two violations of copyright law when a person both downloads and uploads sound recordings via the Internet.  Proof of the download violation may be relatively straightforward when a plaintiff can establish that a recording has been copied to a person's computer.  Proof of a violation by uploading cannot, however, be established merely by showing the availability of files for potential uploading.  A plaintiff must establish a connection to someone else's actual download.  That requires a plaintiff to establish a connection between an uploader and a corresponding downloader, to establish the facts of an actual transaction between the two.  Although such proof may require investigation, a plaintiff should not be relieved of its burden.  Since copyright holders may (and often do) seek statutory damages of up to $150,000 per work infringed, *see* 17 U.S.C. §504(c)(2), without having to prove actual harm, for such remedies they should be required to furnish allegations and proof of actual violations. The remedies provide an adequate incentive for a proper investigation.

Amici believe that Plaintiffs want to invoke the concept of "making available" instead of the statutory elements of a section 106(3) distribution because Plaintiffs perceive that the investigations needed for proper allegations and proof of uploading liability (as contributory infringement liability for another's download) are burdensome.  Of course, the present motion in this case relates to a pleading, not a proof, but the two are related.  To allege a violation of

---

analysis.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994); *Harper & Row v. The Nation Enterprises,* 471 U. S. 539, 560 (1985).

section 106(3) a plaintiff must allege an actual distribution of copies or phonorecords to the

public by sale or other transfer of ownership, or by rental, lease, or lending.

## V.    THE WIPO DIGITAL TREATIES DO NOT CALL FOR AN EXPANSION OF THE DISTRIBUTION RIGHT.

Plaintiffs argue that the World Intellectual Property Organization's Copyright Treaty and

Performances and Phonograms Treaty support their interpretation of the "distribution" right

under section 106(3). In fact, the text of the WIPO Copyright Treaty by Plaintiffs undermines

their argument. The relevant text is as follows:

> Authors of literary and artistic works shall enjoy the exclusive right of authorizing the making available to the public of the original and copies of their works through sale or other transfer of ownership. (Article 6)

> [A]uthors of literary and artistic works shall enjoy the exclusive right of authorizing any communication to the public of their works, by wire or wireless means, including the making available to the public of their works in such a way that members of the public may access these works from a place and at a time individually chosen by them. (Article 8)

Plaintiffs have highlighted selected text of those articles in bold face but failed to highlight, or

outright omitted, other critical text. *See* Plaintiffs' Opposition to Motion to Dismiss at 20-21.

Plaintiffs failed to note that Article 6 concerns making available "of the original and copies of

their works through sale or other transfer of ownership." Thus that provision covers certain

narrow types of "making available" activity, specifically the same types of activity *already*

covered by the specific language of section 106(3). See Plaintiffs' Opposition to Motion to

Dismiss of Plaintiffs' broad conception of "making available" as including a mere offer or

potentiality of a transmission, without a "sale or other transfer of ownership," does not even

accord with the treaties they invoke. As to Article 8, the "making available" referred to there, as

an instance of the right of "communication to the public," is covered by the present public

14

display and public performance rights in sections 106(4)-(6) of the Copyright Act and does not justify a distortion of the distribution right in section 106(3).

## CONCLUSION

Plaintiffs' disregard for the plain language of section 106(3) should not be countenanced by this Court in its evaluation of Plaintiffs' pleadings and its consideration of the scope of the distribution right under section 106(3) of the Copyright Act. This Court should not be persuaded to embark upon an erroneous substitution of plaintiffs' vague conception of "making available" for the statutory definition. At the pleading stage now, and at a proof stage later, the Court should ensure that any "distribution" claims be evaluated under the clear statutory language, which requires an actual "distribution of copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."

Dated:    New York, New York
          February 24, 2006

Respectfully submitted,

WINSTON & STRAWN LLP

Andrew P. Bridges
Winston & Strawn LLP
101 California Street, 39th Floor
San Francisco, California 94111
Telephone: (415) 591-1482
Facsimile: (415) 591-1400

Attorney for Amici Curiae
COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION and
US INTERNET INDUSTRY ASSOCIATION

15

# Member Roster

*Ada Core Technologies

Atreus Corporation

CAI/SISCo

*DevIS

*E-GovOS

E Team

Entegrity Solutions Corp.

*Foresight Institute

Fujitsu Limited

*Gnome Foundation

Intuit, Inc.

*Linux Professional Institute

Microsoft

Monster Government Solutions

*MYSQL

NetCom Solutions International

Nortel Networks

Novak Biddle Venture Partners

*Novell

On2 Technologies

Oracle Corporation

Open Source Development Labs

Quickhire

Red Hat

SimDesk Technologies, Inc.

Sun Microsystems, Inc.

Verizon

ViON Corporation

Xyrous Communications

Yahoo! Inc.

*indicates affiliation through
CCIA special project, the Open
Source & Industry Alliance*

### About USIIA

The US Internet Industry Association (USIIA) is the North American trade association for Internet commerce, content and connectivity. Founded in 1994, USIIA advocates effective public policy for the Internet and provides its members with essential business news, information, support and services.

USIIA is a tax-exempt, non-profit trade association incorporated on June 17, 1994 in Washington, DC. It is recognized under Section 501(c)(6) of the Tax Code. USIIA is a member-owned and managed association, with annual election of Directors and an annual meeting through which members direct the activities of the Association.

With members of every size, engaged in virtually every facet of the Internet, USIIA works to craft a business environment in which Internet companies can thrive. Our members benefit from market intelligence on key issues, opportunities for strategic partnerships and affiliations, cost-effective representation with broad-based industry support, and an independent and well-respected voice in Washington on the issues that affect Internet companies.