UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ELEKTRA ENTERTAINMENT GROUP INC., a Delaware :
corporation; UMG RECORDINGS, INC., a Delaware
corporation; and VIRGIN RECORDS AMERICA, INC., a :
California corporation,                          : Case No. 05CV7340(KMK)(THK)

                Plaintiffs,                :

        -against-                         :

DENISE BARKER,                                   :

                Defendant.                 :

------------------------------------------------------------------------x

**PLAINTIFFS' BRIEF IN RESPONSE TO THE AMICUS CURIAE BRIEF
OF THE COMPUTER & COMMUNICATIONS INDUSTRY
ASSOCIATION AND US INTERNET INDUSTRY ASSOCIATION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.     THE LANGUAGE OF 17 U.S.C. § 106(3) PROHIBITS MAKING COPYRIGHTED WORKS AVAILABLE FOR DOWNLOAD THROUGH P2P NETWORKS ............................................................................................ 2

    II.    CASE LAW SUPPORTS THE PRINCIPLE THAT THE EXCLUSIVE RIGHT OF DISTRIBUTION SUBSUMES THE RIGHT OF "MAKING AVAILABLE." .................................................................................................. 5

    III.   THE WIPO DIGITAL TREATIES SUPPORT PLAINTIFFS' POSITION HERE ............................................................................................................. 6

    IV.   MAINTAINING THE LAW AS SET FORTH BY THE REGISTER OF COPYRIGHTS AND AS INTERPRETED BY COURTS WILL NOT LEAD TO A PARADE OF HORRIBLES. ............................................................. 8

CONCLUSION ........................................................................................................................... 10

#1147553 v1
25369/276/739601.1

# TABLE OF AUTHORITIES

**CASES**

Agee v. Paramount Communications, Inc., 59 F.3d 317 (2d Cir. 1995) .................................. 3, 8

Batjac Prod. Inc. v. GoodTimes Home Video Corp., 160 F.3d 1223 (9th Cir. 1998), cert. denied, 526 U.S. 1158 (1999) ......................................................................................... 4

Bonneville Int'l Corp. v. Peters, 347 F.3d 485 (3d Cir. 2003) ........................................ 4

Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277 (3d Cir.), cert denied, 502 U.S. 939 (1991) ....................................................................................................... 3

Getaped.com, Inc. v. Cangemi, 188 F. Supp. 2d 398 (S.D.N.Y. 2002) ............................. 6

Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199 (4th Cir. 1997) ............ 5, 6

In re Napster, 377 F. Supp. 2d 796 (N.D. Cal. 2005) ............................................... 6

Marobie-FL, Inc. v. Nat'l Ass'n of Fire & Equip. Distribs. & Northwest Nexus, Inc., 983 F. Supp. 1167 (N.D. Ill. 1997) ..................................................................... 6

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd., 125 S. Ct. 2764 (2005) ..................... 2, 9

Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59 (1st Cir. 2002) ........................................... 5

Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc., 982 F. Supp. 503 (N.D. Ohio 1997) ......... 6

**STATUTES**

17 U.S.C. § 101 ............................................................................................... 4

17 U.S.C. § 106(3) ............................................................................. 1, 3, 5, 10

17 U.S.C. § 106(5)-(6) ..................................................................................... 9

17 U.S.C. § 512(a) (Digital Millennium Copyright Act) ................................................ 9

**OTHER AUTHORITIES**

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 62, reprinted in 1976 U.S.C.C.A.N. 5659, 5675-76 ..... 3

Letter from Marybeth Peters to Rep. Berman, dated Sept. 25, 2002, reprinted in Piracy of Intellectual Property on Peer-to-Peer Networks: Hearing Before the Subcomm. on Courts, the Internet, and Intellectual Property of the House Comm. on the Judiciary, 107th Cong. 114-15 (2002) ........................................................................................ 1, 2, 7

Melville Nimmer & David Nimmer, Nimmer on Copyright § 8.11(A) (2005) ....................... 3

Plaintiffs Elektra Entertainment Group Inc., UMG Recordings, Inc., and Virgin Records America, Inc. ("plaintiffs") respectfully submit this response to the amicus curiae brief of the Computer & Communications Industry Association and US Internet Industry Association (collectively, "amici").

## INTRODUCTION

Amici seek to have this court rule that the exclusive right of distribution set forth in 17 U.S.C. § 106(3) is limited when it comes to the Internet. They do not dispute that the exclusive right of distribution subsumes some forms of "making available." See Amici Br., at 6. Amici, however, ask this Court to draw a line in § 106(3) that would preclude its applicability when the distribution is occurring on the Internet. That line simply does not exist in the law, nor should it. To the contrary, both the language of the Copyright Act and applicable case law demonstrate that the exclusive distribution right set forth in § 106(3) applies to the situation at issue here, where millions of unauthorized copies of plaintiffs' sound recordings are placed in shared directories that are then uploaded to peer-to-peer ("P2P") networks for the purpose of allowing millions of other people to download from these shared directories.

The United States Copyright Office has interpreted § 106(3) the same way. Thus, as Marybeth Peters, Register of Copyrights for the United States, wrote in a letter to U.S. Representative Howard L. Berman:

> While Section 106 of the U.S. Copyright Act does not specifically include anything called a "making available" right, the activities involved in making a work available are covered under the exclusive rights of reproduction, distribution, public display and/or public performance set out in Section 106. Which of these rights are invoked in any given context will depend on the nature of the "making available" activity.
>
> In the case of a peer to peer network user uploading a copyrighted work onto his or her computer, making it available for other users of the peer to peer network to

1

> download, it is simply incorrect to suggest that the person performing the download is the only person legally responsible for infringement. <u>Making the work available in this context constitutes an infringement of the exclusive distribution right, as well of the reproduction right (where the work is uploaded without the authorization of the copyright holder)</u>.

Letter from Marybeth Peters to Rep. Berman, dated Sept. 25, 2002 ("Peters Letter"), <u>reprinted in Piracy of Intellectual Property on Peer-to-Peer Networks: Hearing Before the Subcomm. on Courts, the Internet, and Intellectual Property of the House Comm. on the Judiciary</u>, 107th Cong. 114-15 (2002) (citations omitted; emphasis added) (a copy of this letter is attached as Appendix A).

Amici's contrary arguments are based on a series of misstatements as to what plaintiffs actually argue in this case. Plaintiffs do not claim that merely typing the name of a copyrighted work on an index violates the distribution right. Rather, plaintiffs contend that, when a user uploads a copyrighted work and makes it available for downloading to millions of other users of a P2P network, that act constitutes an infringement of the exclusive distribution right. To hold otherwise would not only contravene the language of the Act, settled case law, and the interpretation of the U.S. Copyright Office, but also it would allow to continue unimpeded what the United States Supreme Court has described as "infringement on a gigantic scale." <u>See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.</u>, 125 S. Ct. 2764, 2782 (2005).

## ARGUMENT

### I. THE LANGUAGE OF 17 U.S.C. § 106(3) PROHIBITS MAKING COPYRIGHTED WORKS AVAILABLE FOR DOWNLOAD THROUGH P2P NETWORKS

The exclusive right of distribution is significantly broader than amici set forth. Section 501(a) of the Copyright Act provides, in relevant part, "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 . . . is an

2

infringer of the copyright or right of the author, as the case may be." One of the exclusive rights referred to in that section is the right of distribution that is set forth in 17 U.S.C. § 106(3). That section provides:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: . . .
>
> (3) To distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending . . . .

Reading sections 501 and 106(3) together shows, first, that it is an actionable infringement for one to violate a copyright owner's exclusive right to authorize the distribution of copies or phonorecords of a copyrighted work. Thus, contrary to amici's position, the distribution right does not require a consummated transfer of the copyrighted work at issue. Defendant authorized distribution by placing plaintiffs' copyrighted works in her shared directory, where they were available to other P2P network users. This violates the express language of § 106(3).

Moreover, in adopting the language of § 106(3), Congress specifically noted that that section established the exclusive right of publication and gave the copyright owner the right to control the first public distribution of an authorized copy of the work. See H.R. Rep. No. 1476, 94th Cong., 2d Sess. 62, reprinted in 1976 U.S.C.C.A.N. 5659, 5675-76. This determination has led various courts and commentators to find that distribution and publication are synonymous. See, e.g., Agee v. Paramount Communications, Inc., 59 F.3d 317, 325 (2d Cir. 1995); Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 299 (3d Cir.), cert denied, 502 U.S. 939 (1991); Melville Nimmer & David Nimmer, Nimmer on Copyright § 8.11(A) (2005) (noting that the right of distribution "is a right to control the work's publication . . . . The term 'distribution' rather than 'publication' was used merely 'for the sake of clarity.'").

3

"Publication," in turn, is defined as:

[T]he distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The <u>offering to distribute</u> copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.

17 U.S.C. § 101 (emphasis added). Accordingly, under the clear language of the statute, the making available of a work (i.e., the offering to distribute that work) falls within the exclusive right of distribution.

As noted above, the United States Copyright Office has reached precisely the same conclusion, and that Office's interpretation of the Act is entitled to deference where, as here, it is a reasonable one. <u>See</u> <u>Bonneville International Corp. v. Peters</u>, 347 F.3d 485, 490 & n. 9 (3d Cir. 2003); <u>Batjac Productions Inc. v. GoodTimes Home Video Corp.</u>, 160 F.3d 1223, 1230 (9th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1158 (1999) ("[T]he Register [of Copyrights] has the authority to interpret the copyright laws and [] its interpretations are entitled to judicial deference if reasonable.") (citations omitted).

In their brief, amici suggest that the language of the Copyright Act does not support liability for "making available," apparently for two reasons. First, amici contend that the MP3 files at issue are not "copies" or "phonorecords," because they allegedly are not material objects. Second, amici claim that there has been no distribution by sale or other transfer of ownership, or by rental, lease, or lending, because the distributor has not completely parted with ownership of the work. <u>See</u> Amici Br., at 5-6 & n. 3. These arguments are baseless.

As discussed in plaintiffs' response to the amicus brief filed by the Electronic Frontier Foundation, there can be no question that the transfer of an MP3 file over the Internet constitutes a distribution. The issue is not whether a material object travels through cyberspace, but whether

4

a material object exists at the end of the transfer. In this particular case, and in all P2P cases, the allegations are clear that a material object exists at the end of the transmission – there is a hard drive containing the MP3 files.

Amici's other argument that no transfer occurs if the distributor does not part with ownership is contrary to well-settled case law. See, e.g., Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62 (1st Cir. 2002) (rejecting defendant's argument that the liability of a distributor of unauthorized recordings is dependent on the liability of the producer, the court finds that the distributor violates the distribution right by making and selling unauthorized reproductions of copyright-protected songs). Under amici's analysis, there is no violation of the exclusive right of distribution if one buys a CD, makes millions of copies, and provides those copies to others, merely because the distributor still retains the original. This is simply not the law. See id.

For all of the foregoing reasons, the language of the Copyright Act demonstrates that the exclusive right of distribution is violated where, as here, a defendant uploads a copyrighted work and makes it available for download by other users on a P2P network.

## II.   CASE LAW SUPPORTS THE PRINCIPLE THAT THE EXCLUSIVE RIGHT OF DISTRIBUTION SUBSUMES THE RIGHT OF "MAKING AVAILABLE."

Courts have found that, even in the absence of proof that a copyrighted work has actually been fully transmitted to another, the § 106(3) right is violated when a copyrighted work is made available for others. For example, in Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199 (4th Cir. 1997), the defendant obtained unauthorized copies of a work, added a listing of the unauthorized copies to its library's index, and made the unauthorized copies available for the public to check out of the library. The court held that, even in the absence of proof that the work had actually been provided to the public, the work had been distributed

within the meaning of 17 U.S.C. § 106(3). <u>See</u> <u>id.</u> at 203. It was sufficient that the title of the work had been included in an index <u>and that the work could have been checked out by a member of the public</u>. <u>See</u> <u>id.</u>

Here, as in <u>Hotaling</u>, plaintiffs' copyrighted works have effectively been included in an index <u>and can be downloaded by any member of the public who wishes to do so</u>. For the reasons set forth in <u>Hotaling</u>, this violates the exclusive right of distribution. <u>Accord</u> <u>Getaped.com, Inc. v. Cangemi</u>, 188 F. Supp. 2d 398, 402 (S.D.N.Y. 2002); <u>Marobie-FL, Inc. v. National Association of Fire & Equipment Distributors & Northwest Nexus, Inc.</u>, 983 F. Supp. 1167, 1180 (N.D. Ill. 1997); <u>Playboy Enterprises, Inc. v. Russ Hardenburgh, Inc.</u>, 982 F. Supp. 503, 513 (N.D. Ohio 1997).

Amici's reliance on <u>In re Napster</u>, 377 F. Supp. 2d 796 (N.D. Cal. 2005) is misplaced. Indeed, <u>Napster</u> supports plaintiffs' interpretation of the § 106(3) right. In <u>Napster</u>, the district court found that the creation of an index of works, <u>without more</u>, would not violate the exclusive right of distribution. <u>See</u> <u>id.</u> at 803-05. The court went on to hold, however, that it was an act of distribution if the name of the work was put in the index <u>and if that work was made available through that index</u>. <u>See</u> <u>id.</u> at 805-06. The court carefully considered <u>Hotaling</u> and noted that the fact that the copyrighted works were actually made available—not just included in an index—was key to that court's decision. <u>See</u> <u>id.</u> at 802-03. Because the files at issue here were available for downloading, the principles set forth in <u>Hotaling</u> and <u>Napster</u> support plaintiffs interpretation of the § 106(3) right.

### III.  THE WIPO DIGITAL TREATIES SUPPORT PLAINTIFFS' POSITION HERE

As more fully set forth in Plaintiffs' Opposition to Defendant's Motion to Dismiss the Complaint ("Plaintiffs' Opp. Br."), at 20-22, the United States entered into two treaties, namely,

the WIPO Copyright Treaty and the WIPO Performances and Phonograms Treaty (collectively the "WIPO Digital Treaties") that directly address the right of "making available." In order for the United States to sign onto and comply with these treaties, the United States' copyright laws had to protect the same right of "making available" as do the WIPO Digital Treaties.

Notably, the Register of Copyrights, Congress, and many representatives of the Executive Branch concluded that § 106(3) covered the "making available" right, such that no amendment to those statutes was necessary. See Peters Letter ("As you are aware, in implementing the new WIPO Copyright Treaty (WCT) and WIPO Performances and Phonograms Treaty (WPPT) in the Digital Millennium Copyright Act, Congress determined that it was not necessary to add any additional rights to Section 106 of the Copyright Act in order to implement the 'making available' right under Article 8 of the WCT.") (App. A); Plaintiffs' Opp. Br., at 21-22 & nn. 5-7 (citing positions of Executive Branch). Simply stated, because U.S. copyright law contained a "making available" right consistent with the "making available" rights set forth in the WIPO Digital Treaties, no amendment to U.S. copyright law was required.

Perhaps recognizing this indisputable fact, amici attempt to argue that the "making available" rights in the WIPO Digital Treaties were narrow and do not really mean what they say. Specifically, amici argue that Article 6 of the WIPO Copyright Treaty protects only the "making available" of copyrighted works through sale or other transfer of ownership, which amici argue requires the actual sale or transfer of ownership. Similarly, amici argue that, in Article 8 of the WIPO Copyright Treaty, the "making available" to which that provision refers really parallels the public display and public performance rights. Neither of these arguments is supported by the language of the treaties.

7

First, with respect to Article 6 of the WIPO Copyright Treaty, that provision grants to copyright holders the exclusive right "of authorizing the making available to the public of the original and copies of their works through sale or other transfer of ownership." This language expressly recognizes that an actual sale or transfer need not have taken place. Rather, it is a violation of the exclusive right for another to authorize the making available of a copyrighted work through sale or other transfer of ownership. Thus, no consummated transfer is required.

Second, Article 8 provides an exclusive right of authorizing any communication to the public of copyrighted works, by wire or wireless means, <u>including the making available to the public of those works in such a way that members of the public may access these works from a place and at a time individually chosen by them</u>. On its face, this language subsumes the distribution right, because, as here, the recipient is not limited to a public performance or display at a single time, but rather obtains the work to enjoy at any and all times. See Agee, 59 F.3d at 325-26 (distinguishing the right of public performance from the right of distribution). As such, there is no basis for amici's attempt to construe Article 8 as a reference to the right of public display or performance.

IV.   **MAINTAINING THE LAW AS SET FORTH BY THE REGISTER OF COPYRIGHTS AND AS INTERPRETED BY COURTS WILL NOT LEAD TO A PARADE OF HORRIBLES.**

Amici proffer that a parade of horribles will befall commerce were this Court to adopt plaintiffs' interpretation of the Act. Specifically, amici claim that, if this Court were to follow the numerous other courts that have found the distribution right to be violated under the "making available" circumstances at issue here, then amici could be vulnerable to accusations that they "make available" a variety of content, including copyrighted materials, to users merely by providing a network. See Amici Br., at 10-11. Amici further argue that, if all instances of

8

"making available" were considered part of the "distribution" right, then licensees of the public performance and public display rights under § 106 would fall into a trap, because, as amici see it, all public performances and public displays would necessarily constitute "making available." See Amici Br., at 12. These sham arguments are easily unwoven..

First, the law with respect to "making available" has been clear since, at least, when the United States claimed to be in compliance with the WIPO treaties. Notwithstanding that, amici cannot point to a single case in which they have been subjected to the types of improper claims they profess to fear. Given that it has not happened so far, there is no reason to believe that it will happen in the future.

Second, contrary to amici's suggestion that they would be subject to liability merely for providing a network, the Digital Millennium Copyright Act, 17 U.S.C. § 512(a) provides significant protection to service providers like the companies that make up amici. Moreover, as the United States Supreme Court reaffirmed in Grokster, the mere fact that a party creates a network is insufficient, without more, to establish liability for copyright infringement. See Grokster, 125 S. Ct. at 2776 (setting forth elements of secondary liability).

Amici has also argued that, if the distribution right encompasses a making available right, the distribution right begins to bleed into the public performance and public display rights. This argument does not make sense in this case, and does not make sense more generally either. First, plaintiffs have asserted no more and no less than that the uploading of their copyrighted works for purposes of allowing others to download violates the exclusive right of distribution. Plaintiffs have not claimed in this case that public display or performance of their copyrighted works necessarily involves the public distribution right. Second, the public display right does not extend to sound recordings, and the public performance right in sound recordings is limited.

9

See 17 U.S.C. § 106(5)-(6). Indeed, if there were going to be a bleeding of the rights into each other, one would have presumed to have seen that by now – and no such situation has arisen. As such, the purported concern for licensees of public display and public performance rights regarding sound recordings is a red herring.

## CONCLUSION

For all of the foregoing reasons, the exclusive distribution right set forth in 17 U.S.C. § 106(3) is violated where, as here, a defendant makes available to the public plaintiffs' copyrighted sound recordings by uploading files for purposes of allowing others to download those files over P2P networks. As such, defendants' motion to dismiss on the grounds that there is no "making available" right should be denied.

Dated: New York, New York
March 3, 2006

COWAN, LIEBOWITZ & LATMAN, P.C.
Attorneys for Plaintiffs

By: ____s/ J. Christopher Jensen_____
J. Christopher Jensen (JJ-1864)
Maryann Penney (MP-0741)
1133 Avenue of the Americas
New York, NY 10036-6799
Phone: (212) 790-9200
Fax: (212) 575-0671

HOLME ROBERTS & OWEN LLP
Richard L. Gabriel (RG-05065)
1700 Lincoln, Suite 4100
Denver, Colorado 80203
Phone: (303) 861-7000
Fax; (303) 866-0200

10

#1147553 v1
25369/276/739601.1

114



The Register of Copyrights
of the
United States of America

Library of Congress
Department 17
Washington, D.C. 20540

September 25, 2002

(202) 707-8350

RE: Hearing on Piracy of Intellectual Property on Peer-to-Peer Networks

Dear Representative Berman:

In response to your request, I am responding to an assertion made in written testimony for tomorrow's Subcommittee hearing on "Piracy of Intellectual Property on Peer-to-Peer Networks" that U.S. copyright law does not give copyright owners a separate exclusive right of "making available."

This statement reflects an incorrect understanding of U.S. copyright law. While Section 106 of the U.S. Copyright Act does not specifically include anything called a "making available" right, the activities involved in making a work available are covered under the exclusive rights of reproduction, distribution, public display and/or public performance set out in Section 106. (See, e.g., *New York Times Co., Inc. v. Tasini*, 533 U.S. 483 (2001), *Playboy Enters., Inc. v. Frena*, 839 F. Supp. 1552 (M.D. Fla. 1993), *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543 (N.D. Tex. 1997), *Marobie-FL, Inc. v. National Ass'n of Fire Equip. Distribs.*, 983 F. Supp. 1167 (N.D. Ill. 1997), *Religious Tech. Ctr. v. Netcom On-Line Communication Servs.*, 907 F. Supp. 1361 (N.D. Cal. 1995).) Which of these rights are invoked in any given context will depend on the nature of the "making available" activity.

In the case of a peer to peer network user uploading a copyrighted work onto his or her computer, making it available for other users of the peer to peer network to download, it is simply incorrect to suggest that the person performing the download is the only person legally responsible for infringement. Making the work available in this context constitutes an infringement of the exclusive distribution right, as well of the reproduction right (where the work is uploaded without the authorization of the copyright holder). In the Ninth Circuit's decision in *A&M Records v. Napster*, the court held that "Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights." (239 F.3d 1004, 1014 (9th Cir. 2001)).

As you are aware, in implementing the new WIPO Copyright Treaty (WCT) and WIPO Performances and Phonograms Treaty (WPPT) in the Digital Millennium Copyright Act, Congress determined that it was not necessary to add any additional rights to Section 106 of the Copyright Act in order to implement the "making available" right

115

| The Honorable Howard L. Berman | 2 | September 25, 2002 |

under Article 8 of the WCT.[1] Title I of the DMCA was intended to, and did, fully implement the WCT. As I stated in my testimony before the subcommittee, "In our view, [the bill] fully and adequately implements the obligations of the new WIPO treaties, without amending the law in areas where a change is not required for implementation." Since existing U.S. law already covered the activities encompassed in a making available right, "The treaties [did] not require any change in the substance of the copyright rights or exceptions in U.S. law." (H. Rep.105-551 at 15.)

Please let us know if you have any further questions or would like us to provide you with a more detailed analysis.

Sincerely,

Marybeth Peters / JF
Marybeth Peters
Register of Copyrights

The Honorable Howard L. Berman
Subcommittee on Courts, the Internet and Intellectual Property
B-351A Rayburn House Office Building
Washington, D.C. 20515

---

[1] Article 8 provides in pertinent part that:

"[A]uthors of literary and artistic works shall enjoy the exclusive right of authorizing any communication to the public of their works, by wire or wireless means, including *the making available* to the public of their works in such a way that members of the public may access these works from a place and at a time individually chosen by them." WCT, Article 8 (emphasis added.)