UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELEKTRA ENTERTAINMENT GROUP, INC., a
Delaware corporation; UMG RECORDINGS, INC., a
Delaware corporation; VIRGIN RECORDS
AMERICA, INC., a California corporation; and
SONY BMG MUSIC ENTERTAINMENT, a
Delaware general partnership,

                                    Plaintiffs,

          -v-

DENISE BARKER,

                                    Defendant.

Case No. 05-CV-7340 (KMK)

OPINION AND ORDER

Appearances:

Brian E. Moran, Esq.
Robinson & Cole, LLP
New York, New York
*Counsel for Plaintiffs*

Richard L. Gabriel, Esq.
Holme Roberts & Owen LLP
Denver, Colorado
*Counsel for Plaintiffs*

J. Christopher Jensen, Esq.
Maryann Penney, Esq.
Cowan, Liebowitz & Latman, P.C.
New York, New York
*Counsel for Plaintiffs*

Ray Beckerman, Esq.
Morlan Ty Rogers, Esq.
Vandenberg & Feliu, LLP
New York, New York
*Counsel for Defendant*

Michael J. Garcia
United States Attorney for the Southern District of New York
Rebecca C. Martin, Esq.
Assistant United States Attorney
New York, New York
*Counsel for Amicus United States of America*

Andrew P. Bridges, Esq.
Winston & Strawn, LLP
San Francisco, California
*Counsel for Amicus Computer & Communications Industry Association
and U.S. Internet Industry Association*

Eric J. Schwartz, Esq.
Smith & Metalitz LLP
Washington, DC
*Counsel for Amicus Motion Picture Association of America*

Jonathan Zavin, Esq.
Loeb & Loeb LLP
New York, New York
*Counsel for Amicus Motion Picture Association of America*

Fred von Lohmann, Esq.
Electronic Frontier Foundation
San Francisco, California
*Counsel for Amicus Electronic Frontier Foundation*

Wendy Seltzer, Esq.
Brooklyn, New York
*Counsel for Amicus Electronic Frontier Foundation*

KENNETH M. KARAS, District Judge:

Plaintiffs Elektra Entertainment Group, Inc., UMG Recordings, Inc., and Virgin Records

America, Inc. (collectively "Plaintiffs") operate leading recording labels and own many

copyrights in sound recordings.[1]  Plaintiffs have sued Defendant Denise Barker for copyright

---

[1]Sony BMG Music Entertainment was a fourth Plaintiff when this action was filed.  On
January 25, 2006, it filed a stipulation of voluntary dismissal without prejudice.

infringement seeking injunctive relief and damages.[2]  Plaintiffs allege that Defendant infringed

Plaintiffs' exclusive rights of reproduction and distribution by downloading, distributing, and/or

making available copies of protected sound recordings using an online media distribution

system.  Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  For the following reasons, Defendant's Motion to Dismiss the Complaint is DENIED;

however, the Court grants Plaintiffs thirty days to amend their Complaint consistent with this

Opinion.

## I.  Background

Plaintiffs' Complaint states that Plaintiffs "are, and at all relevant times have been, the

copyright owners or licensees of exclusive rights under United States copyright with respect to

certain copyrighted sound recordings (the 'Copyrighted Recordings')" (Compl. ¶ 10), which they

identify as including the sound recordings attached in list form to the Complaint (*id.*, Ex. A).

The Complaint states that "among the exclusive rights granted to each Plaintiff under the

Copyright Act are the exclusive rights to reproduce the Copyrighted Recordings and to distribute

the Copyrighted Recordings to the public." (*Id.* ¶ 11.)  Plaintiffs further plead, based on

information and belief, "that Defendant, without the permission or consent of Plaintiffs, has

used, and continues to use, an online media distribution system to download the Copyrighted

Recordings, to distribute the Copyrighted Recordings to the public, and/or to make the

Copyrighted Recordings available for distribution to others." (*Id.* ¶ 12.)  The Complaint alleges

---

[2]Defendant's counsel has represented to the Court that Defendant's first name is Tenise, not Denise.  Because the Complaint in this case names Denise Barker, the Court will refer to Defendant as Denise Barker in this Opinion, although the Court is cognizant that Defendant's first name is Tenise.

that "each of the published copies of the sound recordings identified in Exhibit A was accessible by Defendant."  (*Id.* ¶ 13.)

Although the Complaint does not identify the "online media distribution system" allegedly used by Defendant, two of the Exhibits attached to the Complaint appear to be screen-shots of the Kazaa peer-to-peer file sharing program.  (*Id.,* Exs. B, C.)  Plaintiffs brought this lawsuit after their investigators identified a Kazaa user named "Phoenyxxx@KaZaA" who had 611 music files on her computer that she offered freely for download to other Kazaa users.  (Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Br.") 6.)  Plaintiffs' investigators identified the Internet Protocol ("IP") address being used by Phoenyxxx@KaZaA and, after filing a "John Doe" complaint and obtaining a court order, Plaintiffs issued a subpoena to Verizon Internet Services, Inc. ("Verizon"), the registrant of the relevant IP address block, in order to determine what user account corresponded to the IP address.  (*Id.* at 6-7.)  Verizon subsequently identified Defendant as the owner of the account, and Plaintiffs filed this suit for copyright infringement against Defendant on August 19, 2005.  (*Id.* at 7.)

Defendant raises two arguments in her Motion to Dismiss.  First, Defendant contends that Plaintiffs' Complaint does not plead copyright infringement with adequate specificity.  Second, Defendant argues that Plaintiffs' allegation that Defendant "ma[de] the Copyrighted Recordings available for distribution to others," (Compl. ¶ 12), fails to state a claim upon which relief can be granted.[3]

---

[3]Plaintiffs' "making available" allegation, which relies on a construction of copyright statutes, has drawn the attention of several interested amici.  The Court accepted briefs from the following amici:  the United States of America, the Computer & Communication Industry Association/US Internet Industry Association ("CCIA/USIIA"), the Electronic Frontier Foundation ("EFF"), and the Motion Picture Association of America ("MPAA").

## II.  Discussion

### A.  Standard of Review

The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted and second alteration in original). In *Twombly*, *id.* at 1964-69, the Supreme Court also abandoned reliance on the oft-cited line from *Conley v. Gibson* that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,"  355 U.S. 41, 45-46 (1957).  As the Supreme Court explained, a literal application of *Conley*'s "no set of facts" rationale is improper because "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery . . . ."  *Twombly*, 127 S. Ct. at 1968.  Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 1969.  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1974.  If Plaintiffs "have not nudged [their] claims across the line from conceivable to plausible, [their] complaint must be dismissed."  *Id.*; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("After careful consideration of the Court's opinion and the conflicting signals from it that we have

identified, we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." (emphasis in original)).

A motion to dismiss requires the Court to "accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs." *Grandon v. Merrill Lynch & Co., Inc*., 147 F.3d 184, 188 (2d Cir. 1998); *see also Blimpie Int'l, Inc. v. Blimpie of the Keys*, 371 F. Supp. 2d 469, 470-71 (S.D.N.Y. 2005). "'In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Glidepath Holding B.V. v. Spherion Corp.*, No. 04-CV-9758, 2007 WL 2176072, at *9 (S.D.N.Y. July 26, 2007) (quoting *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted)).

B.  Analysis

1.  Specificity of the Complaint

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts in this district have construed Fed. R. Civ. P. 8(a)(2) "to require a plaintiff to plead with specificity the acts by which a defendant has committed copyright infringement." *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000). "Broad, sweeping allegations of infringement do not comply with Rule 8." *Id*. (quoting *Kelly v. L. L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994)). Specifically, Rule 8 requires a plaintiff

6

claiming copyright infringement to allege: "(i) which specific original work is the subject of the claim, (ii) that plaintiff owns the copyright in the work, (iii) that the copyright has been registered in accordance with the statute, and (iv) by what acts during what time the defendant infringed the copyright." *Brought to Life Music, Inc. v. MCA Records, Inc.*, No. 02-CV-1164, 2003 WL 296561, at *1 (S.D.N.Y. Feb. 11, 2003).

Defendant argues that under Rule 8 the Complaint must be dismissed because it does not describe specific acts of infringement or the dates and times on which the infringement allegedly occurred. Defendant further argues that the Complaint does not allege that the songs listed in Exhibit A to the Complaint were illegally downloaded or distributed by Defendant. Defendant's arguments are without merit. Rule 8 is "not meant to impose a great burden upon a plaintiff." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Indeed, the purpose of Rule 8(a)(2) "is to give fair notice of a claim and the grounds upon which it rests so that the opposing party may identify the nature of the case, respond to the complaint, and prepare for trial." *Manik v. Avram*, No. 06-CV-477, 2006 WL 2942854, at *3 (S.D.N.Y. Oct. 13, 2006). Here, the Complaint adequately puts Defendant on notice of the alleged infringing acts undertaken by Defendant. In particular, Exhibit B of the Complaint is alleged to be a copy of Defendant's "shared folder" as it appeared on her computer. Plaintiffs submit that Exhibit B provides specific information about Defendant's infringement of Plaintiffs' copyrights, including the network used by Defendant, Defendant's alias, and a comprehensive list of infringed works. (Pls.' Br. 11.) Thus, this Complaint gives Defendant adequate notice of the works subject to Plaintiffs' claim and the grounds upon which Plaintiffs allege Defendant's infringement.

Moreover, the Complaint adequately alleges that Defendant has in the past used, and as

7

of the filing of the Complaint on August 19, 2005, has continued to use, an online media

distribution system to download, distribute, and/or make available, copyrighted works belonging

to Plaintiffs.  The Complaint does not affix a date or time of each instance of alleged

infringement, but it need not do so in order to survive a motion to dismiss.  An allegation of past

and continuing infringement "sufficiently puts defendant on notice as to which acts –

downloading and distribution of certain copyrighted recordings via online media – form the basis

of the Plaintiffs' claim."  *Elektra Entm't Group, Inc. v. Santangelo*, No. 05-CV-2414, 2005 WL

3199841, at *2 (S.D.N.Y. Nov. 28, 2005); *see also Atl. Recording Corp. v. Does 1-25*, No. 05-

CV-9111, at *2 (S.D.N.Y. Jan. 3, 2006) (Order) (denying motion to dismiss because "an

assertion of continuous and ongoing infringement" satisfies the pleading requirement); *Franklin

Elec. Publishers, Inc. v. Unisonic Prod. Corp.*, 763 F. Supp. 1, 4 (S.D.N.Y. 1991) ("[W]hile

plaintiff has not alleged the date defendants allegedly commenced their infringing activities,

plaintiff has alleged that defendant continues to infringe.").  Furthermore, Defendant's argument

that Plaintiffs have not properly pled that Defendant actually downloaded or distributed the

copyrighted recordings is unavailing on a motion to dismiss, where the Court must assume the

truth of all well-pleaded allegations of infringement.  Here, Plaintiffs, in fact, allege that

Defendant did distribute (and/or made available) Plaintiffs' protected works.  This is sufficient

under Rule 8.  *See Franklin Elec. Publishers, Inc.*, 763 F. Supp. at 4-5; *see also Phillips v.

Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) ("Under the Federal Rules, a 'short and plain'

complaint is sufficient as long as it puts the defendant on notice of the claims against it.  The

Rules then rely on extensive discovery to flesh out the claims and issues in dispute." (internal

citation omitted)).[4]

### 2. Plaintiffs' "Make Available" Claim

Plaintiffs' Complaint alleges that Defendant infringed Plaintiffs' copyright by downloading, distributing, and/or making Plaintiffs' copyrighted recordings available to the public, in violation of "Plaintiffs' exclusive rights of reproduction and distribution" under 17 U.S.C. § 106(3).  (Compl. ¶ 12.)  Defendant does not contest in her Motion to Dismiss that Plaintiffs' allegations of distribution state a valid claim under the Copyright Act of 1976 ("Copyright Act").  Defendant does, however, contest Plaintiffs' claim that she is liable to Plaintiffs merely by making the copyrighted recordings available.  In particular, Defendant argues that Plaintiffs cannot establish a violation of their distribution rights without alleging an actual transfer of Plaintiffs' works by Defendant.

### a. The Right of Distribution

"Section 106 of the Copyright Act confers a bundle of exclusive rights to the owner of [a] copyright."  *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985). Among these rights is the right of distribution, which is codified at 17 U.S.C. § 106(3):

> Subject to sections 107 through 122,[5] the owner of copyright under

---

[4]Defendant notes that in a recent case, *Interscope Records v. Rodriguez*, No. 06-CV-2485, 2007 WL 2408484 (S.D. Cal. Aug. 17, 2007), a federal district court applied the *Twombly* pleading standard and held that a complaint similar to the one in this case did not sufficiently state a claim upon which relief could be granted.  *See id.* at *1.  Respectfully, the Court is unpersuaded that *Twombly* demands such a restrictive interpretation of the Rule 8(a) pleading standard.

[5]Section 106 is expressly made subject to Sections 107 through 122 of the Copyright Act, which state limitations on a copyright owner's exclusive rights under 17 U.S.C. § 106(3).  *See, e.g.*, 17 U.S.C. § 107 (fair use limitation).  The limitations expressed in 17 U.S.C. §§ 107-122 have no bearing on Defendant's Motion to Dismiss.

> this title has the exclusive rights . . . to distribute copies or
> phonorecords[6] of the copyrighted work to the public by sale or
> other transfer of ownership, or by rental, lease, or lending . . . .

Plaintiffs argue that Section 106(3), in addition to granting Plaintiffs the exclusive right to

physically distribute their copyrighted sound recordings to the public, also grants to Plaintiffs an

exclusive right to "make available" the copyrighted sound recordings to the public.  This "make

available" right, argues Plaintiffs, was infringed by Defendant's use of the Kazaa peer-to-peer

file sharing program in conjunction with Plaintiffs' copyrighted works.  In other words,

according to Plaintiffs, an actual transfer of Plaintiffs' work is not necessary to establish a

copyright violation under Section 106(3).

　　　　The Court's analysis of Plaintiffs' argument begins with the text of the statute.  *See Cmty.*

*for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) (stating that in interpreting the

Copyright Act, "[t]he starting point for our interpretation of a statute is always its language");

*Playboy Enters., Inc. v. Dumas*, 53 F.3d 549, 562 (2d Cir. 1995) (same); *see also Knight v.*

*Comm'r of Internal Revenue*, 128 S. Ct. 782, 787 (2008) ("We start, as always, with the

language of the statute." (internal quotation marks omitted)).  The word "distribute," the crucial

term in Section 106(3), is not defined in the Copyright Act.  However, while the statute does not

---

[6]"Copies" and "phonorecords" are defined by the Copyright Act as "material objects." 17 U.S.C. § 101.  Amici, in particular the Electronic Frontier Foundation, have argued that digital music files, such as those which reside on Defendant's computer, are not "material objects" and thus are not included in the Copyright Act.  Because Defendant has not raised this argument in her brief, the Court declines to reach this question.  *See United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 61 n.2 (1981) (declining to consider argument by amicus curiae because "it was not raised by either of the parties here or below"); *Bell v. Wolfish*, 441 U.S. 520, 531 n.13 (1979) (declining to reach argument raised by amicus curiae because it was not raised by either party in the litigation); *Bano v. Union Carbide Corp.*, 273 F.3d 120, 127 n.5 (2d Cir. 2001) (declining to reach an argument raised by amici curiae because the argument was not raised by any party to the litigation at either the district or appellate court proceedings).

define "distribute" or "distribution," it does define the term "publication," and does so in a manner which closely mirrors the language of Section 106(3):

> "Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.  A public performance or display of a work does not of itself constitute publication.

17 U.S.C. § 101.  The first sentence of Section 106(3) and the definition of "publication" are virtually identical.  The subsequent sentences in the definition of "publication," however, present additional language which does not appear in Section 106(3).  And it is this additional language – in particular the sentence which defines publication as "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display . . . ." – that Plaintiffs seize upon in arguing for an expansive interpretation of the right of distribution.  The question before the Court, therefore, is whether the Court should look to the definition of the word "publication" to construe the meaning of the term "distribute" in Section 106(3) of the Copyright Act.

Several courts (including the Supreme Court) that have wrestled with the Copyright Act have generally found, relying in part on the statute's legislative history, "distribution" and "publication" to be synonymous.  *See Harper & Row,* 471 U.S. at 552 ("[The Copyright Act of 1976] recognized for the first time a distinct statutory right of first publication, which had previously been an element of the common-law protections afforded unpublished works.  The Report of the House Committee on the Judiciary confirms that 'Clause (3) of section 106, establishes the exclusive right of publications . . . . Under this provision the copyright owner

11

would have the right to control the first public distribution of an authorized copy . . . of his work.'" (quoting H. R. No. 94-1476, at 62 (1976) (hereinafter House Report)); *Ford Motor Co. v. Summit Motor Prod., Inc*. 930 F.2d 277 (3d Cir. 1991) ("'Publication' and the exclusive right protected by section 106(3) . . . are for all practical purposes, synonymous.  Therefore, any clarification of what is meant by 'publication' would also clarify what is meant by section 106(3) . . . ."); *see also Agee v. Paramount Commc'ns, Inc.*, 59 F.3d 317, 325 (2d Cir. 1995) (citing approvingly the *Ford Motor Co.* Court's determination that the terms "distribution" and "publication" are "essentially synonymous," but deciding the case on other grounds).

This Court concurs with the conclusion that the House and Senate of the Ninety-Fourth Congress considered the terms "distribute" and "publication" to be synonymous.  In particular, the Court finds persuasive the words that Congress used to characterize the five exclusive rights given under Section 106.  As noted by the Second Circuit, the text of Section 106 conveys to a copyright owner the right to: "(1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute copies of the work by sale or otherwise; and, with respect to certain artistic works, (4) perform the work publicly; and (5) display the work publicly."  *See e.g., Computer Assocs. Int'l., Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992).  Yet, the House and Senate Committees that evaluated the Copyright Act described this bundle of five rights as "the exclusive rights of reproduction, adaptation, *publication*, performance, and display."  House Report at 61 (emphasis added); S. Rep. No. 94-473 at 57 (1976) (emphasis added) (hereinafter Senate Report).  Thus, both the House and Senate clearly equated the right of distribution with the right of publication.  This choice of language was not a mere slip of the pen:  throughout both the House and Senate Committee Reports, the right contained under 106(3) is described as the

12

right of publication.  For example, the Committee Reports identify the "Rights of Reproduction,

Adaptation, and Publication" as "[t]he first three clauses of section 106."  House Report at 61;

Senate Report at 57.  In addition, the passage of the House Committee Report quoted by the

Supreme Court in *Harper & Row Publishers* notes that Section 106(3) establishes "the exclusive

right of publication" and governs "unauthorized public distribution" – using the words

"distribution" and "publication" interchangeably within a single paragraph.  House Report at 62;

*see also* Senate Report at 58.  In sum, the House and Senate Judiciary Committees of the Ninety-

Fourth Congress consistently described Section 106(3) as protecting both the right of

"distribution" and the right of "publication," and thus apparently viewed these concepts as

synonymous.

        In light of the aforementioned authority, it is unsurprising that courts faced with similar

allegations as in this Complaint have looked to the definition of the word "publication" in 17

U.S.C. § 101 to construe the definition of the word "distribute" in Section 106(3).  *See, e.g., Atl.

Recording Corp. v. Abner Anderson*, No. 06-CV-3578, slip op. at *12 (S.D. Tex Mar. 12, 2008)

("'Distribute' is not defined in the Copyright Act, but the Supreme Court has equated the term

with 'publication,' which is defined under the act."); *Interscope Records v. Duty*, No. 05-CV-

3744, 2006 WL 988086, at *2 (D. Ariz. Apr. 14, 2006) ("[T]he right of distribution is

synonymous with the right of publication . . . ."); *In re Napster, Inc. Copyright Litig.*, 377 F.

Supp. 2d 796, 803 (N.D. Cal. 2005) (equating distribution and publication); *Getaped.com, Inc. v.

Cangemi*, 188 F. Supp. 2d 398, 401 n.2 (S.D.N.Y. 2002) (holding that Section 106(3) gives

copyright holders the exclusive right of publication).   As a result, the Court holds that "[t]he

offer[] to distribute copies or phonorecords to a group of persons for purposes of further

distribution, public performance, or public display," 17 U.S.C. § 101, can violate the distribution

right of Section 106(3).[7]  *But see Obolensky v. G.P. Putnam's Sons*, 628 F. Supp. 1552, 1555-56

---

[7]Plaintiffs argue that the work of the 105th Congress, in particular its approval and understanding of the World Intellectual Property Organization ("WIPO") treaties, should control the interpretation of Section 106(3), a portion of a statute authored by the 94th Congress.  *See* WIPO Copyright Treaty, Apr. 12, 1997, S. Treaty Doc. No. 105-17, *available at* 1997 WL 447232.  The Court disagrees.  First, the Court notes that because the WIPO treaties are not self-executing, they create no private right of action on their own.  *See Medellin v. Texas*, No. 06-984, 2008 WL 762533, at *9 (U.S. Mar. 25, 2008) ("In sum, while treaties 'may comprise international commitments . . . they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms.'" (quoting *Igartúa-De La Rosa v. United States*, 417 F. 3d 145, 150 (1st Cir. 2005) (en banc)) (alteration in original)); *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) ("Unless a treaty is self-executing, however, it does not, in and of itself, create individual rights . . . .").  Second, the Court is hesitant to substitute the claimed legislative intent of the 105th Congress for that of the 94th Congress.  As noted by the Second Circuit in *Siben v. Comm'r of Internal Revenue*, 930 F.2d 1034, 1037 (2d Cir. 1991), "the question of how much weight to accord to the views of a subsequent Congress on the meaning of earlier enactments is not an easy one."  *Compare Russello v. United States*, 464 U.S. 16, 26 (1983) ("[I]t is well settled that the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." (internal quotation marks omitted)) *with Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596 (1980) ("[W]hile the views of subsequent Congresses cannot override the unmistakable intent of the enacting one, such views are entitled to significant weight, and particularly so when the precise intent of the enacting Congress is obscure." (internal citations omitted)).  Here, however, the Court finds ample support in the contemporaneous legislative history of the Copyright Act for concluding that an "offer[] to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display" falls within the distribution right, and thus need not guess the intentions of a subsequent Congress.  *See Doe v. Chao*, 540 U.S. 614, 626-27 (2004) ("'[S]ubsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment,'" (quoting *Solid Waste Agency of N. Cook Cty. v. Army Corps of Eng'rs*, 531 U.S. 159, 170 n.5 (2001)).

In addition, the Court is unpersuaded by Plaintiffs' suggestion that the opinion of Marybeth Peters, the Register of Copyrights, should influence the Court's interpretation of Section 106(3).  The Second Circuit has made it clear that "the Copyright Office has no authority to give opinions or define legal terms, and its interpretation on an issue never before decided should not be given controlling weight."  *Bartok v. Boosey & Hawkes, Inc.*, 523 F.2d 941, 947 (2d Cir. 1975) (footnotes omitted); *see also Morris v. Bus. Concepts, Inc.*, 283 F.3d 502, 505 (2d Cir. 2002) (quoting *Bartok*).

(S.D.N.Y. 1986) (an unconsummated offer to sell a copyrighted work does not constitute

infringement under the Copyright Act of 1976); Paul Goldstein, Goldstein on Copyright §7.5.1

(3d ed. 2005) ("The crux of the distribution right lies in the transfer . . . of a copy or phonorecord

. . . . [A]n actual transfer must take place; *a mere offer of sale will not infringe the right*.")

(emphasis added); Melville B. Nimmer & David Nimmer, 2 Nimmer on Copyright § 8.11[A] n.2

(2005) ("[N]ote that an offer to distribute copies or phonorecords to the public may in itself

constitute a 'publication,' while the right of distribution apparently is not infringed by the mere

offer to distribute to members of the public." (internal citation omitted)).

    Although the Court finds, using Congress's words, that the distribution right of 106(3)

may be infringed by "[t]he offer[] to distribute copies or phonorecords to a group of persons for

purposes of further distribution, public performance, or public display," 17 U.S.C. § 101, the

Court hesitates in equating this avenue of liability with the contourless "make available" right

proposed by Plaintiff.  Indeed, the support in the case law for the "make available" theory of

liability is quite limited.  The initial judicial authority for this theory comes from the Fourth

Circuit's decision in *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th

Cir. 1997).  In *Hotaling*, the court held that "a library distributes a published work, within the

meaning of the Copyright Act, when it places an unauthorized copy of the work in its collection,

includes the copy in its catalog or index system, and *makes the copy available* to the public."  *Id.*

at 201 (internal citation omitted and emphasis added).  Respectfully, *Hotaling* did not cite any

precedent in holding that making copyrighted works available to the public constitutes

infringement.  Instead, the court – apparently motivated by equitable principles – expressed a

concern that without such a means of establishing infringement, an institution such as a library

15

could avoid liability so long as it refused to keep records relating to the infringing use. *Id.* ("Were [the act of making copyrighted materials available to the public] not to be considered distribution within the meaning of § 106(3), a copyright holder would be prejudiced by a library that does not keep records of public use, and the library would unjustly profit by its own omission."). This interpretation, even if sound public policy, is not grounded in the statute.

A small number of courts, following *Hotaling*, have found a "make available" right in Section 106(3). *See, e.g., A&M Records, Inc. v. Napster Inc*., 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights."); *Abner Anderson*, slip op. at *12-13 (citing *A&M Records, Inc*.); *Motown Record Co., LP v. DePietro*, No. 04-CV-2246, 2007 WL 576284, at *3 n.38 (E.D. Pa. Feb. 16, 2007) ("While neither the United States Supreme Court nor the Third Circuit Court of Appeals has confirmed a copyright holder's exclusive right to make the work available, the Court is convinced that 17 U.S.C. § 106 encompasses such a right . . . ."). *But see Arista Records, Inc. v. Mp3Board, Inc*., No. 00-CV-4660, 2002 WL 1997918, at *4 (S.D.N.Y. Aug. 29, 2002) (limiting the applicability of *Hotaling* to cases where proof of actual infringement is impossible to produce because the infringer has not kept records of public use). The great majority of courts that have considered the question, however, have stopped short of fully endorsing the "make available" right. Instead, many such courts have expressed interest in the possible viability of the "make available" right, without expressly reading the right into the statute or otherwise resolving the issue. *See, e.g., Arista Records LLC v. Gruebel*, 453 F. Supp. 2d 961, 969 (N.D. Tex. 2006) ("[M]aking copyrighted works available to others *may* constitute infringement by distribution in *certain circumstances*." (emphasis added)); *Maverick Recording Co. v.*

*Goldshteyn*, No. 05-CV-4523, 2006 WL 2166870, at *3 (E.D.N.Y. July 31, 2006) ("[T]he

'making available' argument need not be decided here."); *Fonovisa, Inc. v. Alvarez*, No. 06-CV-

011, slip op. at *5 (N.D. Tex. July 24, 2006) (unpublished) ("This Court is not making a

determination as to whether 'making works available' violates the right of distribution.");

*Warner Bros. Records, Inc. v. Payne*, No. 06-CA-051, 2006 WL 2844415, at *4 (W.D. Tex. July

17, 2006) (declining to "rule out the Plaintiffs' 'making available' theory as a possible ground

for imposing liability"); *Duty*, 2006 WL 988086, at *2 ("[T]he mere presence of copyrighted

sound recordings in [defendant's] share file *may* constitute copyright infringement." (emphasis

added)); *see also Atlantic Recording Corp. v. Howell*, No. 06-CV-2076, 2007 WL 2409549, at

*3-4 (D. Ariz. Aug. 20, 2007) (suggesting the viability of the "make available" argument but

deciding the case based on the defendant's physical distribution of copyrighted material),

*vacated on mot. for recons.*, 2007 WL 3010792 (D. Ariz. Sept. 27, 2007). *But see Atl. Recording

Corp. v. Brennan*, No. 07-CV-232, 2008 WL 445819, at *3 (D. Conn. Feb 13, 2008) (denying

plaintiffs' entry of default against defendant, in part, by finding that defendant may have a

meritorious defense against plaintiffs' "problematic" make available argument).

 Plaintiffs ask the Court to be faithful to the Copyright Act and find that "distribution" is

synonymous with "publication." Having accepted that the definition of "distribute" is

synonymous with the definition of "publication," however, liability under Section 106(3)

requires that Plaintiffs – to be faithful to the statute – affirmatively plead that Defendant made an

offer to distribute, and that the offer to distribute was for the purpose of further distribution,

public performance, or public display. *See* 17 U.S.C. § 101; *In re Napster, Inc.,* 377 F. Supp. 2d

at 802-05 (noting that plaintiff's "indexing theory" fell short of demonstrating either "the actual

dissemination of a copyrighted work or an offer to distribute that work for the purpose of its further distribution or public performance," the two ways to show infringement under Section 106(3)). This is so because the statute itself contains no "make available" language in its definition of distribution or publication. In the Complaint, Plaintiffs allege that Defendant has "ma[de] the Copyrighted Recordings available for distribution to others,"[8] (Compl. ¶ 12), not that Defendant "offer[ed] to distribute copies or phonorecords to a group of persons for purposes of further distribution," 17 U.S.C. § 101. Thus, because Congress did not expressly equate the act of "offering to distribute . . . for the purposes of further distribution" to the act of "making available," Plaintiffs' allegations – insofar as Plaintiffs wish to hold Defendant liable for acts of infringement other than actual downloading and/or distribution – fail to state a claim.[9]

Although Plaintiffs have not adequately alleged that Defendant "offer[ed] to distribute [Plaintiffs' copyrighted works] . . . for the purposes of further distribution," Defendant's Motion still fails because Plaintiffs have adequately alleged that, in addition to making Plaintiffs' works

---

[8]The definition of publication in Section 101 requires both an offer to distribute and that the offer to distribute be for the purpose of further distribution, public performance, or public display. *See* 17 U.S.C. § 101. As Plaintiff alleges that Defendant made the Copyright Recordings available "for distribution to others," (Compl. ¶ 12), Plaintiffs' Complaint appears to satisfy the latter requirement. Whether use of a peer-to-peer file sharing program such as Kazaa necessarily entails "further distribution," however, is still an open question. *See Payne*, 2006 WL 2844415, at *4 ("[L]isting copyrighted works on an online file-sharing system contemplates 'further distribution,' and thus, could constitute a violation of the copyright owner's exclusive distribution right under § 106(3).")

[9]It bears emphasizing that the definition of "distribute" here derives from the Copyright Act itself. Thus, Plaintiffs' reliance on caselaw interpreting that word in other contexts is inapposite, as those cases involve different statutes using the term "distribute." *See, e.g.*, *United States v. Shaffer*, 472 F.3d 1219, 1223-25 (10th Cir. 2007) (employing a broad definition of the undefined term "distribution" within 18 U.S.C. § 2552, a criminal statute relating to child pornography); *United States v. Abraham*, No. 05-CR-344, 2006 WL 3052702, at *7-8 (W. D. Pa. Oct. 24, 2006) (same).

available, Defendant distributed Plaintiffs' copyrighted works. Thus, dismissal is not appropriate at this stage. *See Technical Tape Corp. v. Minnesota Mining and Mfg. Co.*, 200 F.2d 876, 877 (2d Cir. 1953) (A. Hand, J.) (holding that dismissal should not be granted if the complaint offers disjunctive allegations and at least one of the allegations is sufficient); *United Magazine Co. v. Murdoch Magazines Dist., Inc.*, No. 00-CV-3367, 2001 WL 1607039, at *5-6 (S.D.N.Y. Dec. 17, 2001) (same); *Liman v. Midland Bank Ltd.*, 309 F. Supp. 163, 169 (S.D.N.Y. 1970) (same); Charles Alan Wright & Arthur R. Miller, 5 Federal Practice and Procedure: Civil 3d § 1284, at 738 (2004) ("Federal Rule 8(e)(2) provides that if two or more statements are made in the alternative and one of them, if made independently, would be sufficient, the pleading is not defective due to the insufficiency of one or more of the alternative allegations."). Of course, whether Plaintiffs can prove Defendant actually distributed the copyrighted works is not presently before the Court. It is enough to conclude, which the Court does, that, on its face, the Complaint sufficiently states a claim based on the distribution allegation alone. However, should Plaintiffs wish to amend their Complaint to track the language of the Copyright Act that prohibits an illegal "offer to distribute," the Court grants Plaintiffs thirty days to amend their Complaint consistent with this Opinion.

### b. The Right to "Authorize" Under Section 106(3)

In its capacity as amicus, the MPAA proposes an alternate means of establishing the "make available" right.[10] MPAA asserts that the "make available" claim is supported by the

---

[10]Although the Court declined to reach EFF's argument that digital music files are not "material objects" within the Copyright Act, *see supra* note 6, the Court will address MPAA's alternate grounds for establishing a "make available" right. The Court takes up this argument because it covers the same ground as Plaintiffs' original "make available" argument, and because it was addressed at length by the Parties at oral argument, *see* Hr'g Tr. at 11-16, 27-39.

introductory clause of Section 106, which gives the owner of a copyright "the exclusive rights to do and to authorize" such enumerated rights as the right of distribution.  17 U.S.C. § 106.  The MPAA cites three cases for the proposition that the word "authorize" in Section 106(3) gives a copyright holder an independent right in addition to the enumerated rights which follow the statute's introductory phrase.

The Court begins its analysis with *National Football League v. Primetime 24 Joint Venture*, No. 98-CV-3778, 1999 WL 163181 (S.D.N.Y. Mar. 24, 1999) (hereinafter *NFL*), which the MPAA cites as favorable authority.  However, in *NFL*, Judge McKenna, relying on *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095-98 (9th Cir. 1994) (en banc), clearly rejected the MPAA's argument when he held that, "*Subafilms* is correct insofar as it holds that 17 U.S.C. § 106 *does not* create an infringeable right of authorization independent of infringement of one of the specific enumerated rights set forth in that section."  *NFL*, 1999 WL 163181, at *4 (emphasis added); *see also Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, No. 96-CV-1103, 1996 WL 724734, at *6 (S.D.N.Y. Dec. 17, 1996) (following *Subafilm*'s holding).  The Court concurs with Judge McKenna's analysis in *NFL*.  The only rights granted to the copyright holder by the statute are found in the numbered sub-sections of Section 106, and unless one of those rights is infringed, the copyright holder has no recourse in law under Section 106.  *NFL*, 1999 WL 163181, at *4 .  Furthermore, as explained in *Subafilms* and *NFL*, Congress added the "authorize" language to Section 106 in order to avoid any confusion with regard to contributory infringers.  *See Subafilms*, 24 F.3d at 1093 (quoting House Report at 57 ("Use of the phrase 'to authorize' is intended to avoid any questions as to the liability of contributory infringers.")); *accord NFL*, 1999 WL 163181, at *4.  Plaintiffs have alleged direct infringement

in their Complaint, not contributory infringement, so MPAA's argument based on the statute's
inclusion of the word "authorize" is misplaced.

MPAA also cites *Curb v. MCA Records, Inc.*, 898 F. Supp. 586 (M.D. Tenn. 1995) and
*Expediters Int'l v. Direct Line Cargo Mgmt. Servs.*, 995 F. Supp. 468 (D. N.J. 1998). *Curb* is
easily distinguished on its facts. *Curb* presented a case of contributory infringement involving a
domestic authorization to distribute copyrighted material overseas. *Curb*, 898 F. Supp. at 592,
595-96. The *Curb* court's holding was limited to cases in which "the authorizee has committed
an act that would violate the copyright owner's § 106 rights." *Id.* at 595. In other words, for
"authorize" to have any legal bite, the *Curb* court required that the infringer also infringe on one
of the copyright holder's enumerated rights. Furthermore, *Curb* is limited on its facts to cases of
contributory infringement, and has no application to cases concerning allegations of direct
infringement, such as the one at bar. *Curb* may also be viewed as sui generis: the *Curb* court
was addressing a scenario in which the authorizer was subject to jurisdiction in the United
States, but the authorizee – the person violating the distribution right – was beyond the
jurisdictional reach of the laws of the United States. The *Curb* court's construction of the statute
was directed, in part, in an effort to construe the statute so as to give copyright holders some
remedy at law against international infringers. As the court points out, "piracy has changed
since the Barbary days." *Id.* The same limitations likewise constrain the *Expediters* decision,
which followed *Curb* in holding that copyright holders have a legal remedy against domestic
authorizers when the authorizee has violated one of the copyright holder's enumerated rights.
*See Expediters*, 995 F. Supp. at 477.

Accordingly, the Court holds that Section 106 does not create an infringeable right of

authorization independent of the expressly enumerated rights set forth in that Section, and thus cannot form the basis for a "make available" right.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss the Complaint based on Rule 8 is DENIED. Defendant's Motion to Dismiss the Complaint because Plaintiffs' "making available" claim fails to state a valid claim is also DENIED, because Plaintiffs have adequately alleged claims of infringement of their exclusive rights of reproduction and distribution based on actual transfers of Plaintiffs' copyrighted works. Should Plaintiffs desire to modify their "make available" allegation, Plaintiffs have thirty days from the date of this Opinion to file an amended complaint consistent with this Opinion.

The Clerk of Court is respectfully directed to terminate the pending motion. (Dkt. No. 17.)

SO ORDERED.

Dated:      March **3**/ , 2008
            New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

22

Service List:

Brian Eugene Moran, Esq.
Robinson & Cole LLP - NYC
885 Third Avenue, Ste. 2800
New York, NY 10022
(212) 451-2900
Fax: (212) 451-2999
Email: bmoran@rc.com
*Counsel for Plaintiffs*

Richard Lance Gabriel, Esq.
Holme Roberts & Owen LLP
1700 Lincoln, Suite 4100
Denver, CO 80203
(303)-866-0331
Fax: (303)-866-0200
Email: richard.gabriel@hro.com
*Counsel for Plaintiffs*

Ray Beckerman, Esq.
Vandenberg & Feliu, LLP
110 East 42nd Street
New York, NY 10017
(212) 763-5809
Fax: (212) 763-6810
Email: rbeckerman@vanfeliu.com
*Counsel for Defendant*

Morlan Ty Rogers, Esq.
Vandenberg & Feliu, LLP
110 East 42nd Street
New York, NY 10017
(212) 763-6838
Fax: (212) 763-6810
Email: mtrogers@vanfeliu.com
*Counsel for Defendant*

Michael J. Garcia
United States Attorney for the Southern District of New York
Rebecca C. Martin, Esq.
Assistant United States Attorney
86 Chamber Street, 3rd Floor
New York, NY 10007
(212) 637-2714
Fax: (212)-627-2686
*Counsel for Amici United States of America*

Andrew P. Bridges, Esq.
Winston & Strawn, LLP
101 California Street, 39th Floor
San Francisco, CA 94111
(415) 591-1482
Fax: (415) 591-1482
*Counsel for Amici Computer & Communications Industry Association
and U.S. Internet Industry Association*

Eric J. Schwartz, Esq.
Smith & Metalitz LLP
1747 Pennsylvania Ave., NW, Suite 825
Washington, DC 20006
(202) 833-4198
Email: schwartz@smimetlaw.com
*Counsel for Amici Motion Picture Association of America*

Jonathan Zavin, Esq.
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
(212) 407-4000
*Counsel for Amici Motion Picture Association of America*

Fred von Lohmann, Esq.
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
(415) 436-9333
Fax: (415) 436-9993
Email: Fred@eff.org

24

Wendy Seltzer, Esq.
250 Joralemon St.
Brooklyn, NY 11201
(718) 780-7961
Fax: (415) 436-9993
Email: Wendy@seltzer.org
*Counsel for Amici Electronic Frontier Foundation*